THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
$52,204.00 UNITED STATES CURRENCY *et al.*, Defendants-Appellants.

Third District   No. 3—93—0026

Opinion filed November 16, 1993.

Rouskey & Kucinic, of Joliet (Chris D. Rouskey, of counsel), for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The claimant, David Hughes, appeals from an order of the circuit court of Will County which allowed the State's petition for forfeiture of $52,204 and an American Security safe. The court found the cur-

rency and the safe were the property of Ruben Hughes (Ruben), the claimant's son, and were subject to forfeiture. The trial court found probable cause existed to believe the currency was the proceeds of the illegal distribution of narcotics and that the safe was used to facilitate the illegal activities.

The claimant raises two issues on appeal: (1) whether the trial court's decision was against the manifest weight of the evidence; and (2) whether the trial court erred in admitting into evidence the entire transcript of the claimant's discovery deposition. Based on the record, we find the trial court's ruling was not supported by the evidence. Accordingly, we reverse.

At the hearing regarding the State's forfeiture petition, a sheriff's deputy testified he was on duty on September 19, 1990. Corine Hughes (Corine), the claimant's wife and Ruben's mother, approached the deputy at the location where he was stationed 1½ blocks from her home. Corine told the deputy that Ruben was involved in gangs and drugs. She gave him some of Ruben's papers, one of which she said contained the Chicago telephone number of Ruben's drug supplier. The deputy turned the information over to narcotics officers.

A search warrant was subsequently issued, and the Hughes residence was searched on May 3, 1991. Corine was present when the police officers came to the residence to execute the search warrant. She identified the northeast bedroom as the room where her son Ruben was staying. She told a police officer that Ruben was a dope dealer. She also stated that her husband, the claimant, had purchased guns for Ruben. Corine said she was upset about the drugs and guns.

Ruben's driver's license and other documents with Ruben's name on them were found in the northeast bedroom. A rifle, a semi-automatic machine pistol, a 12-gauge shotgun and various quantities of ammunition were also found in that room. In addition, the northeast bedroom contained four safes located two to four feet from each other. Corine told one of the officers, Nathaniel Romeo (Romeo), that one safe was full of money and one was full of cocaine. While the search was in progress, the claimant arrived. He told Romeo that he had purchased the safes for his sons. The claimant said he did not know the combinations for the safes. He also said that he had the combination written down somewhere. The claimant also told Romeo that everything in the safes belonged to Ruben. He said he was not aware of the contents of the safes.

The safes were confiscated and later opened. The combination for the largest safe, the American Security safe, was found in the claimant's wallet. This safe contained currency in the amount of $51,946,

two savings account passbooks, a loaded semi-automatic pistol, and an envelope addressed to Ruben with computations on the back. One of the savings account passbooks was in Kimberly Robinson's name. The account had a balance of approximately $17,000. Kimberly was Ruben's girl friend and the mother of his child. The other savings account was in the claimant's name and had a balance of over $22,000.

Another safe contained $258 in cash, business cards with a pager number on them and an AT&T card with computations on it. The remaining two safes were empty. Each of the four safes was swabbed with a sterile cloth. The cloth used to swab one of the empty safes tested positive for the presence of cocaine. During cross-examination, the scientist who performed the test stated that no quantitative analysis was performed on the cloth. He testified that the test would detect the presence of one-billionth of a gram of cocaine.

Romeo was qualified as an expert in the area of drug investigations and drug trafficking. Romeo testified it was common for drug dealers to put money in bank accounts in the name of relatives, girl friends and children. Romeo testified the envelope addressed to Ruben which was found in the American Security safe contained computations on the back which were drug records. Romeo concluded the numbers written on the envelope were a calculation of the profit on the sale of 2¾ ounces of cocaine based upon a price of $1,280 per ounce. Romeo also testified that the pager number written on the business cards was issued to Kimberly Robinson. Romeo stated this type of business card would be used for narcotics transactions. In addition, Romeo indicated the figures written on the AT&T card were drug records. These computations supposedly calculated the profits on the sale of 8½ ounces of cocaine at a price of $1,100. Finally, Romeo testified the computations contained on both the envelope and the card were consistent with the street value of cocaine at the time the computations were found.

During cross-examination, Romeo stated that his determination the calculations were drug records was based upon several factors, including the nature of the investigation, the information received from the informant and the number of weapons found. He stated that if the same calculations were found in an accountant's desk, he would not conclude they were drug records. Romeo also testified during cross-examination that he had purchased drugs from Ruben.

The evidence showed all of the weapons found in the home were registered in the claimant's name. The State stipulated the claimant purchased the American Security safe.

The claimant testified that Ruben did not live in his residence, and the currency in the safes belonged to himself rather than Ruben. The claimant's annual income from employment was around $22,000. However, the claimant indicated that he had accumulated the cash from savings from work over the course of 30 years, cash gifts from deceased family members, lottery winnings and insurance proceeds. Evidence was presented that the claimant signed a real estate contract on April 19, 1991, to purchase an apartment building for $50,000. The claimant testified that he had the money in the safes for the purchase of the apartment building.

The claimant was essentially at a loss to explain the deposits which were made in the savings account listed in his name. The money in this account was withdrawn within several days after the search of the claimant's residence. The claimant could not provide a plausible explanation as to what he did with this money.

The trial court entered a written order which stated it found the testimony of the claimant "incredible, evasive and inconsistent and not to be believed." The court also found the safe and currency were the property of Ruben and subject to forfeiture. This appeal followed.

On appeal, the claimant contends the State failed to meet its burden of showing that the money was subject to forfeiture. In the alternative, the claimant argues he met his burden of showing that the money was his and not forfeitable. The claimant specifically notes that no criminal charges were ever brought against either Ruben or himself. The State contends the evidence established the requisite probable cause to believe that the $52,204 constituted the proceeds of a violation of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1991, ch. 56½, par. 1100 *et seq.*) and the safe was used to facilitate the violation. Based on our review of the record, we agree with the claimant's analysis of the evidence.

Forfeiture proceedings are civil in nature. (*People v. Whitamore* (1993), 241 Ill. App. 3d 519, 528, 608 N.E.2d 1304, 1311.) Civil forfeiture does not require a prior criminal conviction or even a prior criminal proceeding. (*United States v. Property Identified as 908 T Street, N.W.* (D.D.C. 1991), 770 F. Supp. 697, 702; see also *People ex rel. Burmila v. One 1983 Oldsmobile* (1993), 239 Ill. App. 3d 1011, 1013, 607 N.E.2d 311, 313.) Therefore, the fact that no criminal charges were brought against Ruben or the claimant is not dispositive of this matter.

The Drug Asset Forfeiture Procedure Act (Forfeiture Procedure Act) was enacted in 1990 and sets out the procedures applicable to all property forfeitable under the Illinois Controlled Substances Act (Ill.

Rev. Stat. 1991, ch. 56½, par. 1100 *et seq.*) and the Cannabis Control Act (Ill. Rev. Stat. 1991, ch. 56½, par. 701 *et seq.*). (Ill. Rev. Stat. 1991, ch. 56½, par. 1672.) The Forfeiture Procedure Act is based upon the Federal narcotics civil forfeiture statute and may "be construed in light of the federal forfeiture provisions contained in 21 U.S.C. 881 as interpreted by the federal courts." (Ill. Rev. Stat. 1991, ch. 56½, par. 1672.) Therefore, decisions of the Federal courts are helpful in construing the Forfeiture Procedure Act. See *People v. 1988 Mercury Cougar* (1992), 154 Ill. 2d 27, 34, 607 N.E.2d 217, 221.

Under the Forfeiture Procedure Act, the State has the initial burden of showing the existence of probable cause for the forfeiture of the property. (Ill. Rev. Stat. 1991, ch. 56½, par. 1679(G).) During the probable cause portion of the forfeiture proceeding wherein the State presents its case in chief, the court must receive and consider all relevant hearsay evidence and information. (Ill. Rev. Stat. 1991, ch. 56½, par. 1679(B).) Also, the trial court can rely on circumstantial evidence to assist in establishing probable cause to support the forfeiture of the property. *United States v. 14128 South School Street* (N.D. Ill. 1991), 774 F. Supp. 475, 477; *People ex rel. Daley v. 1986 Honda* (1989), 182 Ill. App. 3d 322, 324, 537 N.E.2d 1077, 1078.

Currency is subject to forfeiture if it is "furnished, or intended to be furnished, in exchange for a substance in violation of [the Illinois Controlled Substances Act]." (Ill. Rev. Stat. 1991, ch. 56½, par. 1505(a)(5).) Currency is therefore subject to forfeiture when it is cash derived from the sale of illegal drugs. (*People v. United States Currency $3,108* (1991), 219 Ill. App. 3d 441, 445, 579 N.E.2d 951, 954.) A presumption that currency was furnished or intended to be furnished in exchange for a controlled substance arises when the currency is found "in close proximity to forfeitable substances, to forfeitable drug manufacturing or distributing paraphernalia, or to forfeitable records of the importation, manufacture or distribution of substances." Ill. Rev. Stat. 1991, ch. 56½, par. 1677(1).

If the State shows probable cause to believe the currency was cash derived from the sale of illegal drugs, the claimant has the burden of showing by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture. (Ill. Rev. Stat. 1991, ch. 56½, par. 1679(G).) In making its factual determinations in a forfeiture case, the trial court is entitled to draw reasonable inferences and reach conclusions to which the evidence lends itself. (*People v. One 1990 Chevrolet Suburban* (1992), 239 Ill. App. 3d 815, 817, 605 N.E.2d 92, 94.) Also, the credibility of the witnesses is for the trier of fact. (*People ex rel. Daley v. Nine Thousand Four Hun-*

*dred & Three Dollars $9,403 in U.S.C.* (1985), 131 Ill. App. 3d 188, 192, 476 N.E.2d 80, 83 (hereinafter *$9,403*).) Because a trial court, as the trier of fact, determines whether the State has met its burden based upon its assessment of the credibility of the evidence, a reviewing court will reverse the trial court's ruling only if it is against the manifest weight of the evidence. *Whitamore*, 241 Ill. App. 3d at 528, 608 N.E.2d at 1311.

Here, the trial court found the claimant's testimony was not credible. This conclusion is supported by the record and will not be disturbed on review. Therefore, as the trial court did not believe his testimony, the claimant could not have met his burden of showing that the property was not subject to forfeiture. (See *$9,403*, 131 Ill. App. 3d at 192, 476 N.E.2d at 83.) Thus, the only real issue here is whether the State met its initial burden of showing the existence of probable cause for the forfeiture of the currency and the safe. We note that, as the burden is on the State, the claimant's evasive and inconsistent testimony cannot be used against him to establish probable cause.

■ The second district appellate court recently construed the Forfeiture Procedure Act in *People ex rel. Waller v. $4,175 United States Currency* (1993), 239 Ill. App. 3d 857, 607 N.E.2d 610. The court determined that, in order to sustain its burden of proving probable cause, "the State must show a rational relationship between the contraband and the illegal activity." (*Waller*, 239 Ill. App. 3d at 863, 607 N.E.2d at 613.) However, decisions of the Federal courts construing the analogous Federal statute have determined probable cause to support the forfeiture of property means "reasonable grounds for belief of guilt, supported by less than prima facie proof but more than mere suspicion that the property is being used for criminal activities." (*United States v. $17,538.00 in United States Currency* (D. Kan. 1992), 788 F. Supp. 509, 511; see also *United States v. One Parcel of Real Estate at 1012 Germantown Road* (11th Cir. 1992), 963 F.2d 1496, 1501; *People ex rel. Daley v. 1986 Honda* (1989), 182 Ill. App. 3d 322, 324, 537 N.E.2d 1077, 1078.) We conclude the State has not met its burden under either of these standards.

■ The claimant initially argues the presence of cocaine residue in one of the empty safes was not enough to raise the statutory presumption that the currency was furnished in exchange for a controlled substance. We agree. The presumption of forfeitableness would arise if the currency was "found in close proximity to forfeitable substances, to forfeitable drug manufacturing or distributing paraphernalia, or to forfeitable records of the importation, manufacture or dis-

tribution of substances." (Ill. Rev. Stat. 1991, ch. 56½, par. 1677(1).) The safe in which the cocaine residue was found was, for all intents and purposes, empty. The evidence showed that the amount of cocaine in the safe could have been as little as one-billionth of a gram. Such a microscopic amount could be in the safe for innocent reasons. Anyone could be carrying around currency that has microscopic particles of cocaine residue on it. The trace element of cocaine detected in the safe could have come from money that was once stored in it. As this court previously recognized in *In re Twenty-Seven Thousand Four Hundred Forty Dollars* (1987), 164 Ill. App. 3d 44, 48, 517 N.E.2d 704, 707:

> "Clearly, the legislature intended the presumption to apply to situations where observable controlled substances or distributing paraphernalia, etc., are found in near proximity to currency. However, a presumption cannot be based upon a presumption or an inference where the undisputed facts may give rise to different reasonable inferences. [Citation.] In this case, the State presumes that the $27,440 in United States currency was in close proximity to a forfeitable substance. The only evidence in support of its theory is that a 'residual' amount of cocaine—unweighed by the forensic scientist, not visible to the naked eye and which may have been on a single bill—was identified among the 969 bills that the State is proceeding against. Other than that, the State does not establish where or when the bills were in close proximity to cocaine."

Similarly, in this case, the State did not otherwise establish where or when the bills were in close proximity to cocaine.

■ Neither could the presumption be raised by the "drug records" that were found in one of the safes. The problem is that what are claimed to be drug records are merely calculations on the back of an envelope. The only reason Romeo believed that the calculations were drug records was that he was conducting a narcotics investigation. Romeo admitted that if the same calculations were found in an accountant's desk, he would not conclude that they were drug records. The figures could have been written down for any innocent reason, and there was simply not sufficient evidence that they were drug records. Surely when the legislature spoke of "forfeitable records of the importation, manufacture or distribution of substances," it did not mean mere computations on the back of an envelope that could have been made for a legitimate purpose.

Aside from the question of whether or not the State was able to meet the statutory presumption, we do not believe the State estab-

lished probable cause for forfeiture. Under the applicable statute, the State needed to show that the currency had either been derived from the sale of illegal drugs or was going to be used to purchase illegal drugs. The evidence showed that the money was going to be used for a legitimate purpose: the purchase of an apartment building. Therefore, the State needed to show that the money had been exchanged for a controlled substance. The State had no evidence of this. Under either of the previously cited probable cause standards, the State failed in its burden. The State could not have shown a rational relationship between the contraband and the illegal activity because there was no illegal activity. Neither does the quoted Federal standard of "reasonable grounds for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion that the property is being used for criminal activities," help the State here. Clearly the evidence the State produced did no more than raise a mere suspicion. There were no illegal items found in the claimant's house. In the northeast bedroom there were legal firearms, safes containing currency, savings account books, an AT&T card, and an envelope with notations written on it. No drugs were found in the house. There were not even "equivocal" items present, such as scales or grinders. (See *People v. United States Currency $3,108* (1991), 219 Ill. App. 3d 441, 579 N.E.2d 951.) The State had no evidence of any specific drug dealing activities on the part of Ruben that might have resulted in the acquisition of the seized currency. The mother made the general assertion that her son was a drug dealer, but her credibility was certainly questionable, as she was under the mistaken impression that one of the safes was full of cocaine. Officer Romeo testified that he had purchased drugs from Ruben at some previous time, but Ruben had no convictions for drug dealing. The State's evidence might have raised a suspicion that someone in the house was involved in drug dealing, but fell considerably short of establishing by probable cause that the $52,204 was derived from the sale of illegal drugs.

Our resolution of this issue in the claimant's favor renders unnecessary a discussion of the other issue raised.

For the reasons indicated, the judgment of the circuit court of Will County is reversed.

Reversed.

McCUSKEY, P.J., and SLATER, J., concur.