THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. $1,124,905.00 UNITED STATES CURRENCY *et al.*, Defendants (Jesus Mena, Claimant-Appellant).

Fourth District   No. 4—94—0510

Opinion filed March 3, 1995.—Rehearing denied April 13, 1995.

Jerome Rotenberg, of Chicago, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Claimant Jesus Mena appeals from the decision of the circuit court granting a default judgment in favor of the State in a forfeiture proceeding conducted pursuant to the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 et seq. (West 1992)). We affirm.

On July 9, 1993, Sergeant Michael Snyders of the Illinois State Police noticed a van with its hood raised stopped on the side of Interstate 55 in McLean County. He stopped to assist and saw claimant standing outside the van, as well as a woman identified as Elena Mena, claimant's wife. Elena was holding a baby.

Sergeant Snyders asked claimant and his wife some questions. Claimant appeared nervous and stated they were traveling to St. Louis so he could find work. Elena appeared frightened and stated they were traveling to Texas. She would look at claimant before answering. Claimant stated the van belonged to a friend whom he had known for a year, although he could not remember his name. In addition, claimant possessed a pager. Sergeant Snyders ran a computer check of the van's registration and found the van registered to Melvin DeJesus. Claimant did not know the address or the phone number of the owner, nor could he explain how he intended to return the van to its owner. Sergeant Snyders told claimant he was free to go but expressed suspicion of claimant's story. He asked claimant if

he was carrying any large amounts of cash in the vehicle. Claimant laughed and said no. Claimant also declared he was not transporting anything in the van for anyone else.

After another officer arrived, Sergeant Snyders again told claimant he was free to go, but asked him, in both English and Spanish, for permission to search the van for drugs or money. Claimant responded "go ahead" in English and opened the van's side door for the officers. The officers noticed suspicious-looking flooring in the van and asked claimant if the van had been altered in any way. Claimant replied he did not know anything about the van. The officers discovered a trap door and called for backup. After backup arrived, they opened the trap door and discovered the entire floor compartment was full of cash bundles. Claimant was handcuffed and read his *Miranda* rights. He insisted the money was not his, he did not know who owned it, he did not know it was there, nor did he know anything else about it.

The officers towed the van and its contents to a police station, where they counted a total of 112 cellophane- and duct-tape-wrapped packages of currency with the number "10" written on them, and one with the number "5." A count of the money revealed a total of $1,124,905 in United States currency.

During the counting of the currency, claimant was interviewed by police investigators. Claimant again repeated he had no knowledge of the money contained in the van. However, he admitted he had been directed by Melvin DeJesus to drive the van to El Paso, Texas, and was paid $300 cash for traveling expenses. Claimant explained when he arrived in El Paso, he was to call DeJesus at one of two telephone numbers. Upon additional interviews, claimant admitted DeJesus had told him money was in the van, but not how much. Claimant also admitted he was paid $500 in travel expenses and was to receive an additional $3,500 when the van was delivered. Claimant agreed to make telephone contact with DeJesus with police investigators listening to the conversation. When claimant was able to contact DeJesus and explain what had happened, DeJesus told claimant "tolerate the whip and keep your mouth shut."

Police investigators attempted to locate DeJesus, but the occupants of the address listed on the vehicle registration claimed they had never heard of Melvin DeJesus, nor did they recognize his photo from the Secretary of State's records. Further, the social security number listed on Melvin DeJesus' driver's license returned to a Melvin DeJesus, age 11 years.

Thereafter, the State filed a complaint for forfeiture of the money, and claimant filed an answer to the complaint. The trial court

granted the State's motion to strike claimant's answer upon agreement of the parties. Claimant then filed a motion to strike the State's complaint. The trial court granted the State leave to amend the complaint and accepted the State's amended complaint. The trial court denied claimant's motion to strike. Claimant filed another answer, which the State again moved to strike, alleging claimant's answer did not comply with the requirements of the Forfeiture Act. The trial court granted the motion to dismiss on the basis claimant lacked standing, and granted him 14 days leave to amend his answer, but he filed no further answer. The State filed a motion for default and an affidavit in support of its motion. The affidavit was signed by Sergeant Snyders and stated the above-described circumstances surrounding the seizure of the money. At a hearing on the State's motion, neither claimant nor his attorney appeared. The trial court granted the State's motion for default and entered a written order granting forfeiture of the money. Claimant now appeals.

Claimant asserts the trial court erred by (1) denying his motion to strike the complaint for forfeiture, (2) finding probable cause the money was traceable to an illegal drug transaction, and (3) striking his answer and ruling he did not have standing to contest the forfeiture. We note ordinarily we would address the third issue first, because if claimant lacked standing to contest the forfeiture, we would not need to address the other issues. However, we need not decide whether claimant had standing, because regardless whether claimant had standing to contest the forfeiture, the trial court did not err in granting forfeiture.

The Forfeiture Act sets out procedures for the civil forfeiture of property believed to be involved with drug transactions. Section 2 of the Forfeiture Act declares:

"Legislative Declaration. The General Assembly finds that the civil forfeiture of property which is used or intended to be used in, is attributable to or facilitates the manufacture, sale, transportation, distribution, possession or use of substances in certain violations of the Illinois Controlled Substances Act or the Cannabis Control Act, will have a significant beneficial effect in deterring the rising incidence of the abuse and trafficking of such substances within this State." 725 ILCS 150/2 (West 1992).

Under the Forfeiture Act, when the State's Attorney seizes "nonreal property that exceeds $20,000 in value" believed to be subject to forfeiture, "the State's Attorney shall institute judicial forfeiture proceedings by filing a verified complaint for forfeiture." (725 ILCS 150/9(A) (West 1992).) Notice of the complaint must be given to all persons believed to be potential owners of, or interest holders in, the

property. (725 ILCS 150/4 (West 1992).) At the forfeiture hearing, the State must establish probable cause the property is forfeitable. (725 ILCS 150/9(G) (West 1992).) If the State establishes probable cause, the burden then shifts to the owner or interest holder to show, by a preponderance of evidence, the exemption for forfeiture described in section 8 of the Forfeiture Act (725 ILCS 150/8 (West 1992)). (725 ILCS 150/9(G) (West 1992).) Section 8 essentially establishes an "innocent owner" exemption to forfeiture.

Section 2 of the Forfeiture Act provides courts with direction in interpreting and applying its language:

"The General Assembly further finds that the federal narcotics civil forfeiture statute upon which this Act is based has been very successful in deterring the use and distribution of controlled substances within this State and throughout the country. It is therefore the intent of the General Assembly that the forfeiture provisions of this Act be construed in light of the federal forfeiture provisions contained in 21 U.S.C. 881 as interpreted by the federal courts, except to the extent that the provisions of this Act expressly differ therefrom." (725 ILCS 150/2 (West 1992).)

In addition, "It shall be the intent of the General Assembly that the forfeiture provisions of this Act be liberally construed so as to effect their remedial purpose." 725 ILCS 150/13 (West 1992).

■ Claimant first asserts the trial court erred in denying his motion to strike the complaint for forfeiture. As was shown earlier in the recital of facts, claimant objected to the complaint for forfeiture but then twice filed an answer to the complaint. Claimant concedes pleading over an allegedly defective complaint constitutes a waiver of the defects. Claimant asserts, however, this principle is inapplicable here because his answers were stricken by the trial judge. Claimant contends the effect of striking his answers was the same as if he had not filed answers, and therefore it cannot be argued he waived objection to defects in the State's complaint by pleading over. Claimant has not provided, nor have we found, any authority for this contention. A point in an appellant's brief not supported by citation to relevant authority fails to meet the requisites of Supreme Court Rule 341(e)(7) (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 341(e)(7), eff. February 1, 1994), and is therefore deemed waived. *Walsh v. County Officers Electoral Board* (1994), 267 Ill. App. 3d 972, 979, 642 N.E.2d 843, 847-48.

Claimant next contends the State failed to meet its burden of showing probable cause the currency was forfeitable. We note the Second District Appellate Court has defined "probable cause" in the Forfeiture Act based on Illinois case law interpreting other Illinois

forfeiture statutes. The second district declared in order for the State to meet its burden of showing probable cause under the Forfeiture Act, "the State must show a rational relationship existed between the seized contraband and the illegal activity." (*People ex rel. Waller v. $4,175.00 United States Currency* (1993), 239 Ill. App. 3d 857, 863, 607 N.E.2d 610, 613.) However, we decline to follow this approach because the Forfeiture Act directs us to construe the Forfeiture Act in light of Federal case law interpreting the Federal forfeiture statute (see 21 U.S.C. § 881 (1988)). 725 ILCS 150/2 (West 1992); see also *People v. $52,204.00 United States Currency* (1993), 252 Ill. App. 3d 778, 782-83, 623 N.E.2d 959, 961-63 (noting discrepancy between *Waller* and Federal precedent).

■ Under Federal case law, the government's burden to show probable cause for forfeiture is met by showing " 'reasonable ground for belief' that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance." (*United States v. $121,100.00 in United States Currency* (11th Cir. 1993), 999 F.2d 1503, 1506.) Probable cause is a reasonable ground for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion. (*United States v. One 1987 Mercedes 560 SEL* (5th Cir. 1990), 919 F.2d 327, 331.) Suspicions of general criminality are not enough. The government must have probable cause to believe the money is connected specifically to drug activities, but circumstantial evidence alone may suffice. (*United States v. United States Currency, $30,060.00* (9th Cir. 1994), 39 F.3d 1039, 1041.) There is no need to tie the property to a particular identifiable drug transaction. All that is needed is to show, under the totality of the circumstances, there are reasonable grounds to believe the property probably was derived from drug transactions. (*United States v. Parcel of Land, Buildings, Appurtenances & Improvements, Known as 92 Buena Vista Avenue, Rumson, New Jersey* (3d Cir. 1991), 937 F.2d 98, 104.) The aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden. (*United States v. $67,220.00 in United States Currency* (6th Cir. 1992), 957 F.2d 280, 284.) " ' "That the evidence presented would support an alternative hypothesis," '—some other illicit activity, for example—" 'does not prevent it [from] being probative on the issue of probable cause." ' " (*$121,100.00*, 999 F.2d at 1508, quoting *United States v. Four Parcels of Real Property* (11th Cir. 1991), 941 F.2d 1428, 1440, quoting *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in United States Currency* (5th Cir. 1981), 661 F.2d 319, 324.) Whether the government has established probable cause for forfeiture " 'must be judged not with clinical detachment but with a

common sense [*sic*] view to the realities of normal life.' " (*United States v. Four Million, Two Hundred Fifty-Five Thousand* (11th Cir. 1985), 762 F.2d 895, 904, quoting *Wilson v. Attaway* (11th Cir. 1985), 757 F.2d 1227, 1235.) Whether the facts adduced at a forfeiture hearing constitute probable cause is a question of law subject to *de novo* review. *One 1987 Mercedes*, 919 F.2d at 330.

One Federal court recently noted Federal forfeiture cases "at first glance appear to present myriad and contradictory facts and holdings." (*Jones v. United States Drug Enforcement Administration* (M.D. Tenn. 1993), 819 F. Supp. 698, 722.) That court adopted the view of another Federal court in declaring:

> "['']Drug-related forfeitures can be divided into three categories: (1) close proximity cases where officers find the property with illegal drugs or determine through investigation that it is very closely related to illegal drug dealing; (2) cases relying on less persuasive evidence that is sufficient under the totality of the circumstances; and (3) cases improperly relying on mere suspicion. ***[']

[*United States v. $80,760.00 in United States Currency* (N.D. Tex. 1991), 781 F. Supp. 462, 472-73.] In the second category *** [are] cases which involved the following additional circumstances:

> 1. Corroboration of an informant's tip[;]
> 2. Testimony of witnesses regarding a drug connection[;]
> 3. Presence of drug paraphernalia[;]
> 4. Use of an alias to deceive law enforcement[;]
> 5. Discovery of records documenting drug transactions[;]
> 6. Admissions of the claimant or others[.]

[See *$80,760.00*, 781 F. Supp. at 474]." (*Jones*, 819 F. Supp. at 722-23.)

Here, there is no direct evidence linking the seized currency with drugs, so we must look to the totality of the circumstantial evidence.

Absent direct evidence of a connection to a drug transaction, courts have enumerated numerous circumstantial factors which, although not sufficient standing alone to show probable cause for forfeiture, nevertheless tend to show the existence of probable cause under the totality of the circumstances. A large amount of money is strong evidence of illegal drug activity. (*$121,100.00*, 999 F.2d at 1508; see *Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d at 903.) Other factors include the currency being wrapped by other than bank money wrappers (see *United States v. Twelve Thousand, Three Hundred Ninety Dollars ($12,390.00)* (8th Cir. 1992), 956 F.2d 801, 806); the currency being in a concealed location (*$67,220.00*, 957 F.2d at 285); nervousness of the possessor of the currency (*$121,100.00*, 999 F.2d at 1508); inconsistent statements by the possessor of the cur-

rency *(United States v. United States Currency, in the Amount of $150,660.00* (8th Cir. 1992), 980 F.2d 1200, 1207); the possessor of the currency lacking adequate income to accumulate the money *($150,660.00,* 980 F.2d at 1207); the possessor of the currency being otherwise unable to account for the large amount of currency *(United States v. All Right, Title & Interest in Real Property & Appurtenances Thereto Known as 785 St. Nicholas Ave. & 789 St. Nicholas Ave.* (2d Cir. 1993), 983 F.2d 396, 403); the possessor traveling on a known drug courier route (see *United States v. $64,765.00 in United States Currency* (D. Or. 1991), 786 F. Supp. 906, 913); the destination of the possessor being known for its connection to drugs *($67,220.00,* 957 F.2d at 285); the possessor's admission the money was to be delivered to another person (see *$64,765.00,* 786 F. Supp. at 913); the possessor's admission he was paid to transport the currency *(United States v. $75,040.00 in United States Currency* (D. Or. 1991), 785 F. Supp. 1423, 1428); the possessor's use of a pager *(United States v. $14,500.00 in United States Currency* (M.D. Fla. 1991), 767 F. Supp. 1123, 1126); and the possessor's use of an alias in transporting the currency *($121,100.00,* 999 F.2d at 1508).

■ Here, although there is no direct evidence of a connection between the currency and drugs, each of the above-cited factors was present. Some of these factors tend to show illegal activity in general: both adult occupants of the van appeared nervous and gave several inconsistent or noncredible statements. The van's driver admitted lying to the police. The van's occupants claimed to be unemployed and could not otherwise account for the money, at first denying any prior knowledge of it. In addition, although the van's driver was not using an alias, the van containing the currency was registered to an alias identity.

More important, however, several of the factors here tend to show not just an illegal activity, but an illegal *drug* activity. A very large amount of currency, over $1 million, was wrapped in cellophane and duct tape and concealed in a hidden compartment in the van's floor. All this is consistent with the method of transporting money obtained from illegal drug transactions. The van had been traveling on Interstate 55 between St. Louis and Chicago, a known drug courier route. The van's driver was using a pager, commonly used by persons involved with the drug trade. The van's passengers admitted their destination was El Paso, Texas. El Paso is located on the United States-Mexican border, which is known for its connection with drug and drug money smuggling. Most important, the van's driver later *admitted* not only was he transporting the money for someone else, he was to be paid several thousand dollars upon delivery of the van

and money in El Paso. This admission by the van driver is consistent with the method of operation of drug money couriers.

These facts just enumerated possibly could support more than one inference of illegal activity. However, by far the most logical and only reasonable inference, particularly using a commonsense view of the realities of normal life, is the money either was used or was going to be used to facilitate an illegal drug transaction. Given the number and type of circumstantial factors here, there are reasonable grounds to believe the money not only was connected with an unlawful enterprise, but an unlawful enterprise with drug trafficking at its heart. A determination probable cause for forfeiture exists here is bolstered because these facts presented by the government went uncontroverted and unrebutted at the forfeiture hearing. There exists not just mere suspicion, but probable cause for believing the money was connected to drugs.

Claimant cites several cases as support for his proposition the State failed to show probable cause for forfeiture: *United States v. $38,600.00 in United States Currency* (5th Cir. 1986), 784 F.2d 694, 698, *United States v. $31,990 in United States Currency* (2d Cir. 1993), 982 F.2d 851, *People v. United States Currency $3,108* (1991), 219 Ill. App. 3d 441, 579 N.E.2d 951, *In re Twenty-Seven Thousand Four Hundred Forty Dollars* (1987), 164 Ill. App. 3d 44, 517 N.E.2d 704, and *$52,204.00*. Claimant's reliance on these cases is misplaced.

In *$52,204.00*, police seized the currency from one of two safes in a house when the claimant's wife mistakenly informed police there were drugs in the safes. Although traces of cocaine residue were found on the safes, the claimant had a steady income and testified he had saved the money over a 30-year period. The court declared the State lacked probable cause because the evidence showed the money was going to be used for a legitimate purpose: the purchase of an apartment building. (*$52,204.00*, 252 Ill. App. 3d at 784-85, 623 N.E.2d at 963-64.) Here, there is *much* more evidence of a connection to drugs, and claimant has not offered any explanation to rebut the State's evidence. Both *Twenty-Seven Thousand Four Hundred Forty Dollars* and *$3,108* are inapposite because in those cases the State's burden was to show forfeitability by a preponderance of evidence under the Illinois Controlled Substances Act (see 720 ILCS 570/100 *et seq.* (West 1992)). Here, the State need show only probable cause for forfeiture under the Forfeiture Act.

In *$38,600.00*, the money was found under the backseat of a car. The only factors present tending to show a connection to drugs were the amount of cash, inconsistent and evasive answers by the money's possessor, and the concealment of the money under the backseat

along with some drug paraphernalia. In *$31,990*, the money was found in the trunk of a cab. The only factors present tending to show the money was connected to drugs were the amount of cash, the cash was bundled with plastic bags and rubber bands, the possessor made false statements, the possessor was of Dominican nationality and was driving a cab on a known drug courier route, and he was in possession of half a gram of cocaine. In these two cases, the Federal courts declared the evidence rose only to the level of suspicion of a connection between the currency and drugs. However, in both these cases, the amount of money was only a tiny fraction of the amount of money seized here, providing a weaker inference of involvement with drug transactions. Further, neither of these cases had as many factors present as here tending to show a connection to drugs. Most significant, in neither case did the possessor of the currency *admit* he was a paid courier of the money and was transporting the money to a location near the United States-Mexican border.

The facts here are more similar to the facts in *People ex rel. Garnati v. $14,000 United States Currency* (1992), 227 Ill. App. 3d 64, 590 N.E.2d 1022. In *Garnati*, the State sought forfeiture of $14,000 seized from a vehicle the claimant had been driving. The currency was tainted with traces of cocaine, so the State sought to raise a presumption of forfeitability under section 505(a)(5) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1505(a)(5)). However, what is relevant is the court's consideration of the claimant's admissions concerning the money:

> "We find it highly improbable that there would be any legitimate reason for two unknown men to pay [claimant] $1,000 to secrete $14,000 in currency in his car and transport it to yet a third unknown individual in Texas. Such evidence gives rise to only one reasonable inference. We conclude that the evidence was sufficient to raise the presumption of forfeitability." (*Garnati*, 227 Ill. App. 3d at 67, 590 N.E.2d at 1024.)

Similarly, given claimant's admissions here, there is only one reasonable inference—the currency either was used or was going to be used to facilitate a drug transaction. One might even say this conclusion is obvious under the circumstances here. The State has shown probable cause for forfeiture.

Given the State met its burden to show probable cause the money was forfeitable, the burden at the forfeiture hearing then shifted to claimant (assuming he in fact had standing) to prove by a preponderance of evidence the money was exempt from forfeiture. Claimant did not appear at the forfeiture hearing and thereby offered no evidence in an attempt to meet his burden. If unrebutted, a showing of

probable cause alone will support forfeiture. (*United States v. One 1987 Ford F-350 4x4 Pickup* (D. Kan. 1990), 739 F. Supp. 554.) The trial court did not err in granting the petition for forfeiture.

The circuit court's grant of the complaint for forfeiture is affirmed.

Affirmed.

McCULLOUGH and COOK, JJ., concur.