# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. $174,980 United States Currency**, 2013 IL App (1st) 122480

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. $174,980 UNITED STATES CURRENCY, Defendant (Ermir Spahiu, Claimant-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-12-2480 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | July 22, 2013<br><br>August 21, 2013<br>August 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for the State in forfeiture proceedings based on the trial court's finding that there was probable cause that a nexus existed between the currency seized from claimant and illegal drug activity, since the observed activities of claimant and three other men were consistent with narcotics trafficking, claimant exchanged bags with men known to be involved in drug trafficking, one bag contained currency packaged in a manner consistent with drug trafficking, a canine alert indicated that the currency had a residual odor of narcotics, a similar amount of currency previously had been seized from claimant as drug proceeds, and claimant refused to respond to the State's discovery requests. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-COFO-586; the Hon. James A. Zafiratos, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Pfeifer & Pfeifer, of Evanston (George S. Pfeifer and Jeremy T. Pfeifer, of counsel), for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Joan F. Frazier, and Ramune Rita Kelecius, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State initiated civil forfeiture proceedings against $174,980 in United States currency (the currency), after the money was discovered in a vehicle driven by claimant-appellant, Mr. Ermir Spahiu. Claimant filed an answer to the complaint in which he claimed ownership of the currency. However, claimant was thereafter barred from testifying or presenting evidence at trial as a discovery sanction, after he invoked his constitutional right against self-incrimination and refused to substantively respond to the State's discovery requests. The circuit court ultimately granted the State's motion for summary judgment, finding that the State had established probable cause that a nexus existed between the currency and illegal drug activity. Claimant has appealed, and we affirm.

¶ 2                                  I. BACKGROUND

¶ 3    On September 13, 2011, the State filed a civil complaint for the forfeiture of the currency, pursuant to the relevant forfeiture provisions of the Illinois Controlled Substances Act (720 ILCS 570/505(a)(5) (West 2010)), the Cannabis Control Act (720 ILCS 550/12(a)(5) (West 2010)), and/or the Methamphetamine Control and Community Protection Act (720 ILCS 646/85(a)(5) (West 2010)) (collectively, the Drug Control Acts), as well as the judicial *in rem* forfeiture procedures contained in the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/9 (West 2010)). The State's complaint asserted that the currency was subject to forfeiture because there was probable cause to believe that there was a nexus between the currency and a violation of one or more of the Drug Control Acts.

¶ 4    In support of this assertion, the State's complaint alleged that on June 11, 2011, Rolling Meadows police officers were conducting surveillance in Schaumburg, Illinois. In the

parking lot of a restaurant, the officers observed a meeting among: (1) claimant, driving a blue Dodge Intrepid; (2) Mr. Krenar Vasha, driving a black Chevrolet Tahoe; (3) Mr. Ajaz Sulejani, driving a silver Mercedez-Benz; and (4) a fourth, unidentified male who arrived with Mr. Vasha. The unidentified male entered the Intrepid and retrieved a white plastic shopping bag and placed it into the rear seat of the Tahoe. Claimant was then observed retrieving a "weighted bulky [canvas] bag" from the Mercedes-Benz and placing it into the rear of the Intrepid. When claimant began to drive away, he was stopped by Mr. Vasha, who then opened the rear door of the Intrepid and appeared to examine the canvas bag. Shortly thereafter, claimant left the parking lot in the Intrepid, followed by Mr. Sulejani in the Mercedes-Benz.

¶ 5    Based upon the officers' training and experience, they believed that a narcotics transaction had just taken place. The officers, therefore, stopped the Intrepid in Elgin, Illinois. As the officers were making the traffic stop of the Intrepid, Mr. Sulejani sped away in the Mercedes-Benz. After identifying claimant as the driver of the Intrepid, the officers found that the canvas bag contained a large amount of United States currency that had been heat-sealed in three separate clear, plastic bags. Based again upon the officers' training and experience, the currency was packaged in a manner typically used by narcotics traffickers to transfer cash. The currency was subsequently counted, and totaled $174,980.

¶ 6    After returning to the police station, the currency was hidden, and a canine trained in the detection of cannabis and other controlled substances began a systematic search. The canine gave a positive alert when it came upon the currency, which was an indication that the currency had a positive residual odor of narcotics. Further investigation revealed that claimant had been previously stopped by law enforcement officials in Colorado, at which time $189,000 in United States currency was seized as drug proceeds. Additional investigation revealed that Mr. Vasha and Mr. Sulejani were high-ranking members of cannabis trafficking organizations in, respectively, Detroit and Chicago.

¶ 7    The State's complaint concluded by asserting that "[b]ased upon the training and experience of the Rolling Meadows police officers, the positive dog sniff, the unusual packaging of the currency, and the above stated facts," there was probable cause to believe that: (1) there was a nexus between the currency and a violation of one or more of the Drug Control Acts; (2) the currency was furnished or intended to be furnished in exchange for a controlled substance, in violation of one or more of the Drug Control Acts; and/or (3) the currency represented proceeds from transactions in violation of one or more of the Drug Control Acts. The complaint, therefore, asked that the currency be declared forfeited pursuant to the Forfeiture Act, the rights of anyone claiming an interest in the currency be terminated, and the currency be released to the Illinois State Police for proper distribution.

¶ 8    On November 28, 2011, counsel for claimant filed an appearance and an answer to the State's complaint in the form of a signed, verified claim in which claimant sought to "claim his interest" in the currency. Therein, claimant asserted that he was the owner of the currency and sought its return. However, invoking the fifth amendment to the United States Constitution (U.S. Const., amend. V), claimant asserted a right to refuse to provide any information with respect to the date upon which he acquired the currency, the circumstances

under which the currency was acquired, or the identity of the transferor of the currency.[1] Rather, claimant's verified claim asserted that the currency was not subject to forfeiture because there was no probable cause for the seizure and there was "[n]o nexus to contraband/no possession of contraband."

¶ 9     The record reflects that the State thereafter served claimant with interrogatories and a request to produce documents. Claimant repeatedly refused to substantively respond to the State's discovery requests, even in the face of an order granting the State's motion to compel. Rather, the claimant repeatedly asserted a "right to refuse to answer based upon the 5th Amendment to the U.S. Constitution." In light of claimant's refusals to respond, the circuit court granted the State's motion for discovery sanctions. The circuit court specifically ordered that claimant would be barred from testifying or presenting any evidence at trial, although his answer would not be stricken and he would be permitted to cross-examine the State's witnesses.

¶ 10     On March 28, 2012, the State filed a motion for summary judgment, which was supported by the following attachments: (1) an affidavit from Officer Mike A. Schoop of the Rolling Meadows police department; (2) photos of the seized currency; (3) claimant's verified answer and his responses to the State's discovery requests; and (4) a copy of the circuit court's order granting the motion for discovery sanctions.

¶ 11     Officer Schoop generally averred in his affidavit that, if called as a witness, he would testify to facts consistent with the allegations contained in the State's complaint. In addition, Officer Schoop would also testify that: (1) he had been a police officer since 2001, had received specific training in narcotics investigations, and had conducted hundreds of narcotics-related investigations; (2) his training and experience had taught him that drug traffickers often travel in separate vehicles and in tandem to provide security and hinder surveillance; and (3) drug traffickers heat-seal packages of narcotics or currency to prevent their discovery by drug-sniffing canines. Finally, Officer Schoop averred that, in light of all of his observations and training, "the packaging and delivery of the currency is consistent with evidence of narcotics trafficking."

¶ 12     In the summary judgment motion itself, the State asserted that the totality of the facts presented, along with the adverse inference that could be drawn from claimant's invocation of his fifth amendment rights, established that there was probable cause to believe a nexus existed between the currency and violations of one or more of the Drug Control Acts. The State further contended that no genuine issue of material fact existed with respect to this or any other issue. In his response, claimant acknowledged that "[t]he basic facts are not in dispute." Nevertheless, claimant asserted that summary judgment in favor of the State was not warranted because, other than the positive dog sniff–which claimant asserted was insufficient on its own–"there was no other evidence present to support a nexus between the cash seized and drug activity." Claimant's response did not include any argument that the State did not have probable cause to initially seize the currency.

[1]The Forfeiture Act requires such information to be included in any verified answer to a forfeiture complaint. 725 ILCS 150/9(D)(iv) (West 2010).

-4-

¶ 13    The circuit court ultimately issued an eight-page written order. Therein, the circuit court first noted that the facts presented by the State were not in dispute and that claimant was barred from presenting any further evidence. The circuit court then noted that the relevant standard under which to evaluate the sufficiency of the evidence of probable cause was the "totality of the circumstances." The circuit court, therefore, disagreed with claimant that the only important and relevant piece of evidence in this matter was the dog sniff. Rather, the circuit court concluded that "[t]aken together, the positive drug sniff, the amount of money seized, the packaging of the money in a manner used to avoid detection, the adverse inference from Claimant's silence, the observations of the officers at the scene, the activities of Claimant prior to the traffic stop, the exchanging of bags with known drug traffickers, are sufficient to support a reasonable belief that there exists a nexus between the currency and illegal drug activity." The State's motion for summary judgment was, therefore, granted. Thereafter, claimant's motion to reconsider was denied and a judgment of forfeiture was entered. Claimant has now appealed.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, claimant does not raise any challenge to the circuit court's imposition of discovery sanctions, nor does he contend that the State lacked probable cause to initially seize the currency. Rather, claimant contends that the circuit court improperly entered summary judgment after finding that the State had met its burden to establish probable cause that a nexus existed between the currency and illegal drug activity. For the following reasons, we reject the arguments raised by claimant on appeal and affirm the circuit court's entry of summary judgment for the State.

¶ 16                             A. Standard of Review

¶ 17    Summary judgment is appropriate only where the pleadings, depositions, admissions and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). Although a drastic means of disposing of litigation, summary judgment is nevertheless an appropriate measure to expeditiously dispose of a suit when the moving party's right to the judgment is clear and free from doubt. *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009).

¶ 18    The court ruling on a motion for summary judgment must examine the evidentiary matter in a light most favorable to the nonmoving party (*Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (2001)), and construe the evidence strictly against the movant and liberally in favor of the nonmovant (*Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995)). Nevertheless, facts " 'contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion.' " *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 14 (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 241 (1986)). When reviewing an order granting summary judgment, "we conduct a *de novo* review of the evidence in the record." *Espinoza*, 165 Ill. 2d at 113.

¶ 19                                    B. The Forfeiture Act

¶ 20        "The Illinois General Assembly passed the Forfeiture Act to establish uniform procedures
for the seizure and forfeiture of drug-related assets." *People v. $280,020 United States
Currency*, 372 Ill. App. 3d 785, 791 (2007). As such, its provisions are "applicable to all
property forfeitable under the Illinois Controlled Substances Act, the Cannabis Control Act,
the Illinois Food, Drug and Cosmetic Act, or the Methamphetamine Control and Community
Protection Act." 725 ILCS 150/3 (West 2010). The three Drug Control Acts relied upon by
the State each provide that the following are subject to forfeiture: (1) everything of value
furnished, or intended to be furnished, in exchange for a substance in violation of those Drug
Control Acts; (2) all proceeds traceable to such an exchange; and (3) all moneys, negotiable
instruments, and securities used, or intended to be used, to commit or in any manner to
facilitate any violation of those Drug Control Acts. 720 ILCS 570/505(a)(5) (West 2010);
720 ILCS 550/12(a)(5) (West 2010); 720 ILCS 646/85(a)(5) (West 2010). The Forfeiture Act
itself is based upon the federal narcotics forfeiture statute, and specifically incorporates
relevant federal case law. 725 ILCS 150/2 (West 2010).

¶ 21        Where the State has seized real property or, as is the case here, non-real property that
exceeds $20,000 in value, the Forfeiture Act mandates that a civil, *in rem* judicial proceeding
be initiated. 725 ILCS 150/9 (West 2010). "The State brings the action against seized
property pursuant to the legal fiction that the property itself is guilty of facilitating a crime."
*People v. Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon
County, Illinois*, 217 Ill. 2d 481, 497 (2005). With respect to such *in rem* proceedings, the
Forfeiture Act provides:

     "The State's Attorney initiates the action by filing a verified complaint for forfeiture.
     [Citation.] Only an owner or interest holder may file an answer asserting a claim against
     the property. [Citation.] The answer must contain certain information, including the
     circumstances surrounding the claimant's acquisition of the property." *Id.* at 497-98.

¶ 22        Furthermore, civil hearings under the Forfeiture Act follow a two-step process. 725 ILCS
150/9 (West 2010). In the first step, "the State has the initial burden of showing the existence
of probable cause for forfeiture of the property." *1945 North 31st Street*, 217 Ill. 2d at 498;
725 ILCS 150/9(B), (G) (West 2010). To satisfy this probable cause requirement, the State
must allege and prove "facts providing reasonable grounds for the belief that there exists a
nexus between the property and illegal drug activity, supported by less than *prima facie* proof
but more than mere suspicion. [Citation.] Probable cause in this context requires only a
probability or substantial chance of the nexus and not an actual showing." *1945 North 31st
Street*, 217 Ill. 2d at 505. In addition, the State's evidence "need not exclude other plausible
hypotheses" as to the source of seized property. *Id.*

¶ 23        Ultimately, " 'it is the totality of the circumstances, not a minute parsing of each item of
information, that leads to a finding of probable cause.' " *Id.* (quoting *United States v. One
1987 Mercedes 560 SEL*, 919 F.2d 327, 331 (5th Cir. 1990)). At this first stage of the *in rem*
proceedings, "the court must receive and consider, among other things, all relevant hearsay
evidence and information." 725 ILCS 150/9(B) (West 2010). Summary judgment in favor
of the State is appropriate at the first stage where the uncontradicted affidavits supporting

such a motion establish probable cause and a claimant has been barred from presenting any additional evidence. See *People v. 1515 Coolidge Avenue*, 308 Ill. App. 3d 805, 812-13 (1999).

¶ 24     If the State shows probable cause, the matter proceeds to the second step, where the burden shifts to the claimant to show by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture. 725 ILCS 150/9(G) (West 2010). "A claimant may satisfy this burden by establishing one of the innocent-owner defenses provided in section 8 of the Forfeiture Act." *1945 North 31st Street*, 217 Ill. 2d at 498; 725 ILCS 150/8 (West 2010). However, "[i]f the State does show existence of probable cause and the claimant does not establish by a preponderance of evidence that the claimant has an interest that is exempt under Section 8 of this Act, the court shall order all property forfeited to the State." 725 ILCS 150/9(H) (West 2010). At this stage of the proceedings, "[t]he laws of evidence relating to civil actions shall apply." 725 ILCS 150/9(B) (West 2010).

¶ 25                                C. Discussion

¶ 26     Before we turn to the ultimate propriety of the circuit court's order granting summary judgment in favor of the State, we first address and reject a number of specific, individual arguments and assertions made by claimant on appeal.

¶ 27                        1. Specific Arguments and Assertions

¶ 28     We initially note that claimant's appellate briefs contain incorrect assertions as to the nature of both the State's burden regarding probable cause and the circuit court's ruling on the State's motion for summary judgment.

¶ 29     For example, claimant asserts that summary judgment was improper because there were issues of material fact as to "whether the State had demonstrated a nexus between the seized property and drug activity" and that the State failed to "meet its burden of showing a nexus." As discussed above, however, to establish probable cause the State only had the burden of providing reasonable grounds for the *belief* that a nexus between the property and illegal drug activity existed, and this burden can be met without showing that such a nexus actually existed. *1945 North 31st Street*, 217 Ill. 2d at 505.

¶ 30     Similarly, claimant contends that the circuit court improperly viewed the evidence in the light most favorable to the State because the fact that the bag exchanged for the currency contained narcotics was only one possible inference, and the bag may actually have contained "stolen merchandise, jewels, trade secrets, or other non-narcotics." We reject this contention because, while the evidence must be construed in the light most favorable to claimant at the summary judgment stage, it must be reiterated that the State was not required to actually prove–nor was the circuit court required to find–that the bag exchanged for the currency actually contained narcotics. *Id.*

¶ 31     Indeed, the underlying probable cause standard provides that the State's evidence "need not exclude other plausible hypotheses" and, thus, the State only had to demonstrate a "probability or substantial chance" that the bag exchanged for the currency contained

narcotics. *Id.* Resolving this matter via summary judgment does not alter this underlying standard, and the actual content of the bag exchanged for the currency was, therefore, not a "material fact" for purposes of establishing probable cause in this matter. See 735 ILCS 5/2-1005(c) (West 2010). Thus, summary judgment in favor of the State may be entered without making any assumption or inference that the bag exchanged for the currency actually contained narcotics.

¶ 32    Additionally, claimant contends that it is improper to rely upon the adverse inference that arises due to his invocation of his fifth amendment privilege and his refusal to answer the State's discovery requests. To be clear, claimant does not take issue with the fact that such an adverse inference can typically be drawn. See *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 332 (1997) ("It is 'the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties in civil actions when they refuse to testify in response to probative evidence offered against them.' " (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976))). Instead, claimant contends that such a adverse inference should not be considered at the summary judgment stage when considering whether the State had met its burden to establish probable cause for the forfeiture of the currency. We disagree.

¶ 33    We first find that claimant's argument on this point improperly relies upon the decision in *People v. $52,204.00 United States Currency*, 252 Ill. App. 3d 778 (1993). In that case, the appellate court reasoned as follows in the course of reviewing the circuit court's civil forfeiture of currency following a hearing at which claimant testified:

"Here, the trial court found the claimant's testimony was not credible. This conclusion is supported by the record and will not be disturbed on review. Therefore, as the trial court did not believe his testimony, the claimant could not have met his burden of showing that the property was not subject to forfeiture. [Citation.] Thus, the only real issue here is whether the State met its initial burden of showing the existence of probable cause for the forfeiture of the currency and the safe. We note that, as the burden is on the State, the claimant's evasive and inconsistent testimony cannot be used against him to establish probable cause." *Id.* at 783.

¶ 34    The appellate court in that case simply found that the testimony a claimant presented with respect to the second stage of a forfeiture proceeding should not be considered on appeal to determine if the State had actually met its initial burden to establish probable cause. We fail to see how this reasonable conclusion relates to the separate question of whether the adverse inference arising from claimant's prehearing decision to invoke the fifth amendment can be considered at the summary judgment stage, when addressing whether the State has met its initial burden to establish probable cause for the forfeiture of the currency.

¶ 35    Second, we note that this court has generally recognized that such an adverse inference can be drawn and considered at the summary judgment stage of a civil proceeding, provided that–as is the case here–additional evidentiary support for the motion for summary judgment is also presented. *Independent Trust Corp. v. Hurwick*, 351 Ill. App. 3d 941, 954 (2004). We are not aware of any authority that would preclude this general rule from applying in the context of a civil forfeiture proceeding. Nor has claimant cited any authority to support his

contention that any such inference should not be considered until after the State has established probable cause via other evidence. We, therefore, find that it is proper to consider this adverse inference in the context of addressing whether the State met its burden to establish probable cause for the forfeiture of the currency.

¶ 36    Claimant next argues that it would be improper to rely upon the evidence that Mr. Vasha and Mr. Sulejani were high-ranking members of cannabis trafficking organizations. He contends that because it was hearsay, this evidence should be given either no weight or little weight. As noted above, however, the Forfeiture Act itself provides that in considering the question of probable cause at the first stage of a forfeiture proceeding, "the court *must* receive and consider, among other things, all relevant hearsay evidence and information." (Emphasis added.) 725 ILCS 150/9(B) (West 2010). Moreover, this evidence was contained in Officer Schoop's uncontradicted affidavit and, as such, must be taken as true for purposes of the State's summary judgment motion. *Anderson*, 2011 IL App (1st) 110748, ¶ 14. Therefore, claimant's argument on this point is unfounded.

¶ 37    The final individual argument we will address, before considering the totality of the circumstances, is claimant's contention that it would be improper to consider the evidence that $189,000 had been previously seized from him as drug proceeds. Claimant contends that there was no additional averment that this money was actually forfeited, it is possible that the money was returned to him after it was found not to be drug-related and, thus, "[a] seizure of money is not evidence." We cannot agree with this argument. No facts have been presented to support claimant's musings about what ultimately became of the previously seized money, and "[m]ere speculation is not enough to create a genuine issue of material fact sufficient to survive a motion for summary judgment." *Jordan v. Knafel*, 378 Ill. App. 3d 219, 228 (2007). It, therefore, remains uncontradicted that a large amount of money was previously seized from claimant on a suspicion that it represented drug proceeds, representing just one of the facts presented by that State that may be properly considered as support for the *belief* that a nexus existed between the instant currency and illegal drug activity. *1945 North 31st Street*, 217 Ill. 2d at 505.

¶ 38    To the extent that claimant also contends that it would be improper to rely upon this evidence at the summary judgment stage because it would require an improper inference in favor of the State, we again disagree. " 'In making a determination of probable cause[,] the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.' " *People v. Schmitt*, 346 Ill. App. 3d 1148, 1153 (2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). Thus, no assumptions or inferences need be made as to whether the money previously seized from claimant was *actually* drug-related or was *actually* forfeited.


¶ 39                    2. Propriety of Summary Judgment in Favor of the State
¶ 40    We now turn to a consideration of whether the State was entitled to summary judgment because the circumstances it presented, taken as a whole, demonstrated that no genuine issue of material fact existed with respect to whether there was probable cause to support the forfeiture of the currency. This is the relevant question in this case because, as we noted

above, summary judgment in favor of the State is appropriate at the first stage of a forfeiture proceeding where the uncontradicted affidavits supporting such a motion establish probable cause and a claimant has been barred from presenting any additional evidence. *1515 Coolidge Avenue*, 308 Ill. App. 3d at 812-13.

¶ 41    Here, the State asserts that the following circumstances support its argument that probable cause existed: (1) the observed activities of claimant and the other three men, which Officer Schoop's extensive training and experience indicated were consistent with narcotics trafficking; (2) claimant's exchange of bags with two men known to be involved in narcotics trafficking; (3) the recovery of a large amount of money inside one of those bags, packaged in a manner consistent with narcotics trafficking; (4) a positive alert upon the currency by a trained canine, indicating that the currency had a positive residual odor of narcotics; (5) the fact that $189,000 had been previously seized from claimant as drug proceeds; and (6) the adverse inference arising from claimant's refusal to respond to the State's discovery requests. We have already concluded that many of these circumstances may be properly considered as probative evidence of the existence of probable cause.

¶ 42    In addition, the other facts presented by the State may also be properly considered as probative evidence on this issue. Specifically, the observations and reasonable beliefs of a police officer trained and experienced in narcotics trafficking may be considered in the context of determining probable cause, both generally and in the specific context of forfeiture proceedings. *United States v. Burnside*, 588 F.3d 511, 518 (7th Cir. 2009); *United States v. One 1982 Buick Regal VIN No. 1G4AM47A2CR149469*, 670 F. Supp. 808, 810-11 (N.D. Ill. 1987). The large amount and distinctive packaging of the seized currency may also be considered as evidence of possible narcotics trafficking. *United States v. $242,484.00*, 389 F.3d 1149, 1160-62 (11th Cir. 2004). The positive alert to the currency by a trained canine is also proper, probative evidence. *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 460-61 (7th Cir. 2005); *$280,020 United States Currency*, 372 Ill. App. 3d at 795.

¶ 43    In sum, the State has presented a host of facts and circumstances, all of which are uncontradicted and all of which may be considered as probative evidence that reasonable grounds existed for the belief that the currency at issue here was exchanged for narcotics in violation of one or more of the Drug Control Acts. See 720 ILCS 570/505(a)(5) (West 2010); 720 ILCS 550/12(a)(5) (West 2010); 720 ILCS 646/85(a)(5) (West 2010). Against this evidence stands: (1) claimant's aforementioned arguments that some of these facts and circumstances should not be considered; and (2) his generalized arguments that summary judgment was improper because there was "considerable doubt" about the contents of the bag exchanged for the currency and because "[t]he individual circumstances, many of which were completely innocuous, should have been viewed strictly against the movant and in favor of the claimant."

¶ 44    However, we have already rejected many of claimant's specific arguments with respect to the individual circumstances presented by the State and concluded that the remaining circumstances are proper, probative evidence of the existence of probable cause. Morever, we have also already explained that claimant's focus on any possible doubt with respect to the actual contents of the bag exchanged for the currency is immaterial here, where the

State's evidence "need not exclude other plausible hypotheses" and, thus, only had to demonstrate a "probability or substantial chance" that the bag contained narcotics. *1945 North 31st Street*, 217 Ill. 2d at 505. Finally, we find improper claimant's attempt to show that each individual fact or circumstance presented here is "innocuous," as "this sort of divide-and-conquer analysis" is precluded under a totality of the circumstances standard. *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

¶ 45 We reiterate that, in forfeiture proceedings " 'it is the totality of the circumstances, not a minute parsing of each item of information, that leads to a finding of probable cause.' " *1945 North 31st Street*, 217 Ill. 2d at 505 (quoting *One 1987 Mercedes 560 SEL*, 919 F.2d at 331). After reviewing *all* the uncontradicted evidence and other circumstances presented by the State, we are confident that no genuine issue of material fact exists and the State established "facts providing reasonable grounds for the belief that there exists a nexus between [the currency] and illegal drug activity." *Id.* Indeed, as "only a probability or substantial chance of the nexus" is all that is required (*id.*), summary judgment in favor of the State is appropriate because the evidence, viewed in the light most favorable to the claimant, conclusively established probable cause for the forfeiture of the currency (see *Balma v. Henry*, 404 Ill. App. 3d 233, 242 (2010) (summary judgment proper where " 'all the evidence, viewed in the light most favorable to the nonmovant, permits no inferences from which different conclusions may be drawn and with which no reasonable person could disagree' " (quoting *Caponi v. Larry's 66*, 236 Ill. App. 3d 660, 670 (1992)))).

¶ 46                                                III. CONCLUSION

¶ 47 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 48 Affirmed.