THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. $1,002 UNITED STATES CURRENCY, Defendant-Appellee.

Fourth District   No. 4—90—0694

Opinion filed May 15, 1991.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

PRESIDING JUSTICE LUND delivered the opinion of the court:

The State appeals from the order of the circuit court of McLean County denying its complaint for forfeiture of $1,002 United States currency. We reverse.

On February 21, 1990, the State filed a complaint for forfeiture of $1,002 U.S. currency, nine hypodermic syringes, and quantities of heroin pursuant to section 505 of the Illinois Controlled Substances Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, par. 1505). The complaint alleged that the foregoing items were recovered by officers of the Illinois State Police during the lawful search of an automobile. The cause proceeded to a hearing.

Trooper William Colbrook testified that on February 21, 1990, he conducted a traffic stop of an automobile operated by Jerry Fields, the additional party in this case. Fields exited the car and presented a Missouri citation identifying him as Jerry Reynolds. Colbrook conducted a pat-down search for weapons and retrieved a bundle of currency from Fields' left front trouser pocket. Colbrook and Fields proceeded to Colbrook's squad car, where Colbrook issued Fields a citation for failing to have a valid driver's license and a written warning for improper lane usage. Sometime later, Trooper Jeff Gaither arrived to assist Colbrook. As Gaither was talking to Fields' passenger, who was still in the car, he saw and recovered a red and white capsule. Gaither returned to Colbrook's squad car with the capsule. Colbrook asked Fields what it was, and Fields replied that he did not know because it was not his car. Fields provided the officers with the phone number of the owner of the car. The Depart-

ment of State Police contacted the owner of the car, and informed the officers that Fields had permission to use it. Colbrook then requested and obtained Fields' permission to search the car for contraband, drugs, and weapons.

During the search, Gaither found a red suitcase in the back of the car which contained hypodermic syringes. Colbrook returned to his squad car and asked Fields if he was a diabetic or an epileptic. After Fields replied that he was a diabetic, Colbrook asked him if he had a prescription to possess hypodermic syringes. Fields responded that a prescription is not required to possess hypodermic syringes in Missouri. As Gaither continued the search, he recovered balloons with a white powdery substance on them and a "bottle-cap" cooker containing a dark tar substance. Colbrook described the cooker as a bottle cap with a wire wrapped around it as a handle so that it could be used as a cooker. He explained that the recovered items are "commonly known as what a junky would use." Gaither also found a pocketknife and two white bottles. One of these bottles appeared empty and the other contained a clear liquid.

Colbrook performed a field test for heroin on the tar substance in the bottom of the bottle-cap cooker. The substance tested positive for heroin. Colbrook then asked Fields to exit the squad car and lift up his sleeves. He observed "track marks," or collapsed veins, on the inside of Fields' elbows. Fields then told Colbrook "that he was a junky and that he had shot up two days earlier." Colbrook placed Fields under arrest for possession of hypodermic syringes and a controlled substance.

When asked how he determined the ownership of the red suitcase, Colbrook responded that Fields' passenger told him that Fields owned the suitcase. Colbrook further explained that he found a wallet containing an expired Missouri driver's license belonging to Fields in the suitcase.

Colbrook testified that he recovered $1,022 in U.S. currency from Fields, $20 of which he allowed Fields to give to his passenger so that he could return to Missouri.

Colbrook then explained the handling of the recovered evidence:

"Q. [Prosecutor:] Okay. With respect to the substance that you had field tested, did you—you took that item, specifically the bottle cap cooker, into your custody. .s that right?

A. [Colbrook:] Yes, I did. I took all—custody of all evidence.

Q. And where did you take the evidence?

A. I took it to a locker, McLean County Sheriff's Department.

Q. Okay, and then what did you do with it?

A. I placed it into evidence.

Q. Okay, and who would have been responsible for seeing that that evidence was subsequently taken to the crime lab to be examined by a forensic scientist?

A. Be the District 6 FM officer.

Q. And who is that?

A. We've had several.

Q. Master Sergeant Vedder?

A. He would have been one of them."

Trooper Gaither's testimony substantially corroborated Colbrook's testimony and provided some additional relevant details. Gaither explained that the suitcase he recovered was on the backseat of the car within the driver's reach. He also stated that he observed Colbrook conduct the field test of the substance contained in the cooker and interpreted the result as a positive indication that the substance was heroin. Gaither explained he had performed the test in the past and had independent knowledge and experience that would assist him in interpreting the results.

Debra Minton, an Illinois State Police forensic scientist, testified that on February 27, 1990, she received a manila envelope sent by certified mail from Master Sergeant Ron Vedder of the Illinois State Police. The envelope contained three sealed manila envelopes. Minton explained that the first envelope contained a small bottle cap and a pocketknife. The second envelope contained a ziplock bag in which there were two wet bottles. The third envelope contained balloons, a nylon band, and some syringes.

Minton stated that she performed an analysis consisting of two standard tests on the substance found in the bottle cap. The tests confirmed the presence of cocaine, heroin, and diphenhydramine. She performed no tests on the other evidence which was sent to her. The court asked Minton if she made identifying marks on the evidence. She replied that she marked all three envelopes. The court also asked if she had seen the envelopes since she returned them to the State Police. Minton responded that she had not.

Fields, who appeared *pro se* in the hearing, offered no evidence.

At the conclusion of the hearing, the court questioned whether the State had established the chain of custody for the bottle-cap cooker. The State argued that it had satisfied the preponderance of the evidence standard of proof characteristic of civil proceedings. The court granted the State leave to file a memorandum of law citing authority in support of its argument.

On September 11, 1990, the court entered an opinion and order denying the State's complaint for forfeiture. The court further ordered the

return of the $1,002 currency to the additional party and the destruction of the bottle-cap cooker. The State filed timely notice of appeal.

At the outset, we note that the additional party has not filed a brief in this court. However, since the record is simple and the issues are clear, we will address the merits of the case. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The State raises two major contentions on appeal. First, the State contends the officers' testimony that the dark tar substance field tested positive for heroin was sufficient to prove by a preponderance of the evidence that it was a controlled substance. Therefore, the State contends, establishing a chain of custody from the scene of the arrest to the crime lab was not essential to its case. Alternatively, the State argues that the chain of custody established at the hearing was sufficient to prove that the substance which tested positive for heroin in the crime lab was the substance seized during the defendant's arrest. As the State's first argument provides a basis for reversal, we will not address its second contention.

Sections 505(a)(1) and (a)(5) of the Act state, in relevant part, as follows:

"The following are subject to forfeiture:

(1) all substances which have been manufactured, distributed, dispensed, or possessed in violation of this Act;

\* \* \*

(5) \*\*\* All moneys, coin and currency found in close proximity to forfeitable substances, to forfeitable drug manufacturing or distributing paraphernalia, or to forfeitable records of the importation, manufacture or distribution of substances, are rebuttably presumed to be forfeitable under this Act. The burden of proof is upon claimants of the property to rebut this presumption." (Ill. Rev. Stat. 1989, ch. 56½, pars. 1505(a)(1), (a)(5).)

A forfeiture proceeding is an *in rem* action against the item used in the commission of an offense. As the proceeding is civil in nature, the State need only prove its right to the property by a preponderance of the evidence rather than beyond all reasonable doubt. *People ex rel. Power v. One 1979 Chevrolet Camaro* (1981), 96 Ill. App. 3d 109, 112, 420 N.E.2d 770, 772.

A positive field test has been found sufficient to establish that a substance is a narcotic under both the preponderance of the evidence and beyond a reasonable doubt standards of proof. In *People v. Gaston* (1975), 31 Ill. App. 3d 352, 334 N.E.2d 823, the defendant pleaded guilty to three counts of possession of a controlled substance and was placed on five years' probation. Two months later, police apprehended the defendant and

found a cigarette pack containing 16 packets of white powder in his possession. After the substance field tested positive for heroin, the defendant was arrested and charged with possession of a controlled substance, battery, and resisting arrest. Subsequently, the State petitioned for a rule to show cause why the probation should not be terminated. The cause proceeded to a hearing where neither the cigarette pack nor the white substance was introduced into evidence. The court revoked defendant's probation and sentenced him to a term of seven to eight years' imprisonment.

On appeal, defendant argued that the State provided insufficient proof that the substance was a narcotic because the nature of the substance was proved by incompetent evidence, the chain of custody was not proved, and the cigarette pack was not introduced into evidence. The First District Appellate Court affirmed the decision of the circuit court, reasoning that a positive field test is, by itself, sufficient to establish that a substance is a narcotic. Accordingly, the court found that the chain of custody and the nonproduction of the cigarette pack were immaterial. *Gaston*, 31 Ill. App. 3d at 354, 334 N.E.2d at 825.

*Gaston* was later cited with approval in *People v. Vazquez* (1989), 180 Ill. App. 3d 270, 535 N.E.2d 981. In *Vazquez*, the First District Appellate Court affirmed a criminal conviction for unlawful delivery of a controlled substance. The court found that the defendant's chain of custody challenge was immaterial, in light of the fact that a field test established that the recovered substance was a narcotic. *Vazquez*, 180 Ill. App. 3d at 277, 535 N.E.2d at 986.

■ In the instant case, both officers testified that the substance in the cooker field tested positive for heroin. Trooper Gaither testified that the suitcase containing the cooker was on the backseat of the car, within reach of the additional party from whom the currency was recovered. This testimony was sufficient to raise the statutory presumption that the currency was forfeitable. As the additional party declined to present any evidence to rebut this presumption, the trial court improperly denied the State's complaint for forfeiture.

Reversed.

SPITZ and KNECHT, JJ., concur.