THE PEOPLE *ex rel.* MICHAEL J. WALLER, State's Attorney of Lake County, Plaintiff-Appellant, v. $4,175 UNITED STATES CURRENCY, Defendant-Appellee (Lewis Clayborne, Claimant).

Second District   No. 2—91—0901

Opinion filed January 15, 1993.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Peter A. Staben, of Staben & Kopsick, P.C., of Waukegan, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State brought an action against Lewis Clayborne (hereinafter claimant) for the forfeiture of $4,175 pursuant to section 12 of the Cannabis Control Act (Ill. Rev. Stat. 1991, ch. 56½, par. 712). Following a bench trial, the court ruled in favor of the claimant. On appeal, the State contends that the trial court erred in finding that the State (1) failed to prove that probable cause existed to forfeit the money and (2) failed to establish the applicability of the rebuttable presumption that the money was forfeitable under section 7 of the Drug Asset Forfeiture Procedure Act (Ill. Rev. Stat. 1991, ch. 56½, par. 1677(1)).

The State's complaint for forfeiture alleged, *inter alia*, that on December 21, 1990, claimant knowingly and unlawfully possessed cannabis with the intent to deliver (Ill. Rev. Stat. 1991, ch. 56½, par. 705). The complaint also alleged that $4,175 was used or was intended to be used to facilitate a violation of section 5 of the Cannabis Control Act (Act), that the money was found in close proximity of cannabis, and that the money and cannabis were seized by the Waukegan police department. The State petitioned that the money and cannabis be de-

clared contraband and forfeited, with the money given to the custody of the Director of the Illinois State Police as specified in the Act (Ill. Rev. Stat. 1991, ch. 56½, par. 712).

Claimant filed an amended answer to the complaint stating he had $5,450 in his pants pocket on December 21, 1990. In his amended answer, claimant stated that he acquired this money from a bond refund in case No. 90—CF—713, a bank account withdrawal on December 17, 1990, and a loan from his son for automobile repairs. Claimant further alleged the money was not subject to forfeiture because there was no probable cause to arrest claimant or seize the money, that no presumption of forfeitability existed (Ill. Rev. Stat. 1991, ch. 56½, par. 1677), and that the money was exempt from forfeiture (Ill. Rev. Stat. 1991, ch. 56½, par. 1678(A)(i)).

Claimant's amended answer further alleged that on December 21, 1990, police officers had a search warrant for Karlos Clayborne (a female black 25 to 30 years old), a male black 22 to 26 years old named Winston, and the premises at 725 Eighth Street in Waukegan. Claimant also alleged that at the time of the warrant's execution claimant had just returned from Chicago, taken a shower, and was sitting talking to a guest, John Shannon. Claimant's answer further alleged that the officers' search revealed 14 manila envelopes containing 15.54 grams of cannabis in the second drawer of a dresser in the middle east bedroom. Claimant further alleged that he was taken to his (southeast) bedroom to put on his clothes. Claimant alleged that the $4,175 which was the subject matter of the complaint was found in claimant's pants pocket and that no drugs, cannabis, paraphernalia or drug-related evidence were found in proximity of the $4,175 or claimant. Claimant further alleged the cannabis and an additional $35 found with the cannabis did not belong to claimant and therefore claimant did not claim the additional $35.

At trial, the State presented Detective Daniel Greathouse, a Waukegan police officer assigned to the narcotics task force, as its only witness. Detective Greathouse testified that he was conducting a surveillance of the Clayborne family residence at 3:30 p.m. on the date in question. Between 3:30 and 4 p.m., John Shannon, whom Detective Greathouse had once arrested for possession of a controlled substance, drove up to the residence and knocked on the front door. A black male wearing a blue robe answered and let Shannon inside. Greathouse then met with other officers comprising the search warrant team a few blocks away. Approximately 20 minutes after Shannon entered, Greathouse returned to the premises, looked through the front porch glass window, and saw claimant and Shannon

on a sofa in the living room. Greathouse announced the officers' presence, stated they had a search warrant, and demanded entry. Shannon immediately jumped up from the sofa, looked around frantically, and ran toward the rear of the house. Greathouse then entered the premises, grabbed Shannon, and directed him to the floor. Greathouse searched the house, finding only Shannon and the claimant present. Shannon told Greathouse that he was there to "cop some weed." When asked whose marijuana it was, Shannon replied, "It was the old man's (marijuana), but whomever [sic] is home sells it." Shannon also told Greathouse he was glad the police arrived when they did or else they would have caught Shannon possessing marijuana.

After a brief conversation with the claimant, Greathouse explained that the claimant needed to get dressed. Greathouse then asked the claimant where his bedroom was, and claimant pointed to the southeast bedroom. Greathouse and the claimant walked into the southeast bedroom, where claimant pointed to a pair of pants on the bed. Sergeant Juarez, who was also in the bedroom, picked up the pants, removed a large wad of money from the front pocket and a wallet from the rear pocket. The wad contained $4,140. When Greathouse told the claimant that he had to confiscate the money, claimant "kind of laughed" and said, "Well, that's the same money you guys tried to take last time."

The officers also found cannabis packed in 14 manila envelopes and $35 in a bag in the second drawer in a dresser by the door in the middle east bedroom. Claimant was not present in the middle east bedroom when these items were found. The middle east bedroom was next to the southeast bedroom where claimant's pants were found, but Greathouse did not think the doors of the rooms were next to one another. The middle east bedroom contained female and children's clothes. Greathouse never saw the claimant in the middle east bedroom. No other contraband was found anywhere else in the house. The claimant told Greathouse that the middle east bedroom where the cannabis was found was his daughter Karlos' room. Greathouse further stated that when the officers first entered the premises, the claimant was on the sofa in the living room approximately 8 to 15 feet from where the cannabis was found, and approximately 20 feet from the southeast bedroom where his pants were located.

On cross-examination, Greathouse admitted that the names on the search warrant were those of Karlos Clayborne and a 22-year-old black male subject named Winston. Greathouse admitted that the claimant was neither listed in the search warrant nor on the complaint for the search warrant. Greathouse stated that the basis for his

probable cause for the search warrant consisted of the complaint, which alleged that someone bought some marijuana from Karlos Clayborne and that someone identified as Winston was inside the residence. No contraband was found on Shannon during an initial patdown search, and Greathouse did not know if Shannon had any drugs or money on him. Additionally, there was no money on the claimant's person. Greathouse also testified that he searched the southeast bedroom where the claimant's pants and money were found, did not find any marijuana there, and did not think any marijuana was ever found in the southeast bedroom. Greathouse also stated he did not think any packets, scales, or other indicia of drug trafficking were found in the southeast bedroom.

The State rested its case after Detective Greathouse testified. The claimant then moved for dismissal, contending the State failed to prove sufficient probable cause existed to forfeit the money. Specifically, the claimant contended that the State failed to show probable cause that the money seized was the result of a drug transaction and therefore forfeitable and thus claimant had no duty to present any evidence rebutting forfeitability. After a short recess to review the Act, the court found that the State did not establish probable cause that the money seized from the claimant's pants pocket was subject to forfeiture; that the statutory presumption regarding proximity was not established; and that no justification for forfeiture existed. The court then ordered that the money be returned to the claimant. The State timely appealed.

■■ ■ On review, an appellate court will not reverse a trial court's ruling regarding forfeiture unless the ruling is against the manifest weight of the evidence. (*People v. Strong* (1986), 151 Ill. App. 3d 28, 34.) The forfeiture statute states that the following are subject to forfeiture:

> "(1) [A]ll substances containing cannabis which have been produced, manufactured, delivered, or possessed in violation of this Act;
>
> (2) all raw materials, products and equipment of any kind which are produced, delivered, or possessed in connection with any substance containing cannabis in violation of this Act;
>
> (3) all conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) that constitutes a felony violation of the Act ***." (Ill. Rev. Stat. 1991, ch. 56½, par. 712(a).)

The State has the initial burden of showing the existence of probable cause for forfeiture. (Ill. Rev. Stat. 1991, ch. 56½, par. 1679(G).) During the probable cause portion of the forfeiture proceeding wherein the State presents its case in chief, the court receives and considers all relevant evidence and information, including hearsay. (Ill. Rev. Stat. 1991, ch. 56½, par. 1679(B).) It is only when the State has sufficiently proved the existence of probable cause that the burden shifts to the claimant to show by a preponderance of the evidence that his interest in the property is not subject to forfeiture. (Ill. Rev. Stat. 1991, ch. 56½, par. 1679(G).) The central inquiry here is whether the State showed sufficient probable cause that the money seized from the claimant's pants pocket was used, or intended to be used, to transport or facilitate the transportation, sale, receipt or possession of the cannabis found in Karlos' bedroom.

The State contends initially that the trial court erred in ruling that there was no probable cause to forfeit the money. Recognizing that probable cause is not defined in the forfeiture statute, the State notes that "probable cause" is defined in search and arrest cases as "reasonable grounds for a particular belief or course of action." (See *People v. Gross* (1988), 166 Ill. App. 3d 413; *People v. Weatherbe* (1984), 122 Ill. App. 3d 654.) Equating the "reasonable grounds" standard applied in criminal arrest cases, the State contends that if the State has initially established reasonable grounds to believe the currency is forfeitable, the claimant then has the burden of proving by a preponderance of the evidence that the property is not forfeitable.

The State contends that it met its burden of proof to establish probable cause under this "reasonable grounds" standard. Specifically, the State points out that the 15.54 grams of cannabis in 14 packets shows that somebody in the house was dealing cannabis. Additionally, the claimant had approximately $4,100 in his pants pocket. The State contends that, if the claimant received $1,852 in August as the claimant alleged in his answer, it is doubtful that the claimant carried between $1,800 and $4,000 from August until the seizure of the money on December 21. The State further contends that the claimant was between 8 and 15 feet from the marijuana found in a room adjacent to the sofa in the living room where the claimant was sitting. The State further relies on Shannon's testimony that he was at the house to "cop a bag of weed," that was the "old man's (weed)," that all the occupants sold drugs, and that Shannon was glad the police arrived before he was caught possessing cannabis. The State contends that these facts, when combined with the cannabis being found within 10 to 20 feet of the money in claimant's pants, support the conclusion

that reasonable grounds existed that the money was used, or intended to be used, to facilitate drug trafficking.

The claimant contends that the State's "rational basis" standard of probable cause found in criminal arrest cases does not apply to civil forfeiture proceedings. Rather, the claimant contends, for the State to prove probable cause to forfeit derivative contraband, such as money used or intended for use in illegal activity, the State must show a rational relationship existed between the seized contraband and the illegal activity. (*People v. 1984 BMW 528E Automobile* (1991), 208 Ill. App. 3d 930, 936.) The claimant contends that under this standard the State failed to show probable cause for forfeiture; therefore, he concludes, the trial court's ruling was not against the manifest weight of the evidence.

■ We agree with claimant that the State must show a rational relationship between the contraband and the illegal activity in order to sustain its burden of proving probable cause for forfeiture. Moreover, we agree with claimant that the trial court's decision that the money was not forfeitable was not against the manifest weight of the evidence.

■ In reaching this conclusion, we note that no drugs were found on the claimant's person, on the money seized, in the room where the claimant was sitting, or in the claimant's bedroom. The search warrant did not name the claimant, but rather his daughter. Moreover, the cannabis was found in his daughter's bedroom, which contained women's and children's clothing. The State failed to show any connection between the claimant and the bedroom where the cannabis was found. Additionally, the trial court found specifically that Shannon's statements that the claimant was selling drugs were unreliable. The court noted that Shannon remained in the residence over 20 minutes before the police entered and had a prior arrest record. These facts support clearly the trial court's conclusion that the State failed to show that the claimant was selling or intended to sell drugs. Based on these facts, the trial court concluded that the State failed to show that a rational relationship existed between the money seized from the claimant's pants and any illegal activity. Such ruling was not against the manifest weight of the evidence.

Nevertheless, the State contends that Shannon's testimony and the drug dealing by the claimant's daughter are not inconsistent with a joint operation with the claimant and support Shannon's statement that all the occupants of the residence sold marijuana. The State further contends that, since the claimant is a tenant, an inference could

be drawn regarding his knowledge of what was going on in his residence.

We disagree. The mere facts that the claimant's daughter may have been dealing in marijuana and that the claimant's name appears on rent receipts found in the home do not create an inference that the claimant was involved in illegal drug trafficking. Such mere inferences do not provide probable cause to forfeit the money, when so many other factors show that there was no rational connection between the money seized from the claimant's pants and the drugs found in the claimant's daughter's bedroom. Also, the State's argument is premised on the rational grounds basis used for criminal arrests, whereas forfeiture actions are civil proceedings. See *1984 BMW 528E Automobile*, 208 Ill. App. 3d 930.

The State further contends that the trial judge strayed by analyzing several "tangents" the State believes were not proper considerations to resolve the issue of probable cause. Specifically, the State points to the court's considerations of the complaint for the search warrant, the claimant's having been found not guilty of any criminal activity, and the court's analysis of the reliability and credibility of the evidence. We do not agree that these points were tangential matters. To the contrary, they were facts and evidence necessary for a proper determination of whether probable cause existed to forfeit the money.

We find that the State failed to prove that a rational relationship existed between the cannabis found in Karlos Clayborne's bedroom and the money found in the claimant's pants pockets. Therefore, we uphold the trial court's ruling that there was no probable cause to forfeit the money.

Alternatively, the State argues that the evidence showed that the money seized was found in "close proximity" to the cannabis and therefore a presumption exists that the money was furnished or intended to be furnished in exchange for controlled substances and thus was forfeitable. (See Ill. Rev. Stat. 1991, ch. 56½, par. 1677(1).) The State relies on language from *People ex rel. Daley v. $9,403 in United States Currency* (1985), 131 Ill. App. 3d 188, 191-92, that courts "will not restrict or enlarge the plain meaning of an unambiguous statute to require that controlled substances and forfeitable items related thereto be found in the same drawer, box or cabinet as the money."

The State's reliance on *Daley* is unpersuasive. In *Daley*, police officers found packets of heroin on the kitchen table and, in an adjacent room, found $7,000 in a dresser drawer. The drawer also contained hypodermic syringes. On top of the dresser was a tri-beam scale, a quantity of plastic bags, small squares of tin foil, and an ounce of

powder commonly used to dilute heroin. (*Daley*, 131 Ill. App. 3d at 190.) Here, no cannabis was found in plain view but rather was found in sealed envelopes in a dresser drawer in a room containing women's and children's clothing. No scales, envelopes, or any other indicia of drug trafficking were found on the person of the claimant, in his bedroom, or in the remainder of the residence. Consequently, the instant case is clearly distinguishable from *Daley*.

■ We reject the State's argument that the statutory presumption of forfeitability under section 7 of the Drug Asset Forfeiture Procedure Act applies to the facts presented here. To rule otherwise is tantamount to determining that the presumption exists whenever contraband and money are found in the same premises, without any other connection between them.

■ Lastly, the State contends that the trial court erred when it commented that money used to facilitate a narcotics transaction under section 12 of the Cannabis Control Act is not entitled to the statutory presumption of forfeitability under section 7 of the Drug Asset Forfeiture Procedure Act, because "money used to facilitate narcotics transactions" is not specified in section 7. We note that the State did not cite the language contained in these statutes in its brief, which made following its argument difficult and time consuming. Nevertheless, we have reviewed the trial court's comments regarding the statutes and find no basis for reversal. Moreover, the State fails to assert how such comments affected the outcome of this case.

The trial court's rulings that there was no probable cause to forfeit the money and that the State failed to prove the statutory presumption of forfeitability were not against the manifest weight of the evidence and therefore its judgment must be affirmed. *Strong*, 151 Ill. App. 3d at 34.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and BOWMAN, JJ., concur.