FIRST DIVISION
June 12, 2006

No. 1-04-2624

THE PEOPLE OF THE STATE OF ILLINOIS,  )   Appeal from the
                                      )   Circuit Court of
          Plaintiff-Appellant,        )   Cook County.
                                      )
               v.                     )
                                      )
$111,900, U.S.C.,                     )
                                      )
          Defendant,                  )
                                      )
KEVIN GANIOUS and DARREN WILSON,      )   Honorable
                                      )   Laurence J. Dunford,
          Claimants-Appellees.        )   Judge Presiding.

     JUSTICE BURKE delivered the opinion of the court:

     Plaintiff the People of the State of Illinois appeals from an

order of the circuit court granting claimants[1] Kevin Ganious and

Darren Wilson's motion for a directed finding on the State's

complaint for forfeiture, ordering the return of $111,900 United

States currency to claimants and their attorneys.  On appeal, the

State contends that the trial court erred in (1) granting a

directed verdict in favor of claimants because, as a matter of law,

the totality of the circumstances established probable cause; (2)

_____

     [1]Although attorney Steven Greenberg apparently appeared on
behalf of both claimants, on September 10, 2004, we granted
attorney Charles Snowden leave to file an appearance on behalf of
Wilson, which he did.  Thereafter, we granted Greenberg leave to
withdraw his appearance on behalf of Wilson.  Wilson has not filed
a brief before this court, nor adopted the brief filed by Ganious.

failing to apply the statutory presumption of close proximity to establish probable cause; and (3) permitting Ganious and Wilson to join their claims since they did not share a common defense. For the reasons set forth below, we reverse and remand this cause.

STATEMENT OF FACTS

On June 2, 2002, the State filed a complaint for forfeiture pursuant to the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 2004)), seeking the forfeiture of $111,900 recovered from Ganious. In this complaint, the State alleged that on February 27, the police responded to a 911 call at 7754 South Burnham, #2, in Chicago. The police were met by Ganious, who stated he had found $20,000 and a gun in the 6800 block of South Maplewood and that the people who owned them were going to be looking for him. The police then recovered the following items from Ganious' bedroom: a .32 caliber Smith and Wesson revolver from the top shelf of the bedroom closet; a suitcase containing $64,450 from under a futon in the bedroom; a second case containing $39,400; and seven individually wrapped rock-like substances (suspect cocaine) from the dresser. According to the complaint, sometime after this date, Ganious denied ownership of the money and stated he found it while doing rehab work for Darren Wilson at 6106 South Maplewood. The State relied upon section 7 of the Forfeiture Act to establish probable cause to forfeit the money. This section provides:

2

"The following situations shall give rise to a presumption that the property described therein was furnished or intended to be furnished in exchange for a substance in violation of the Illinois Controlled Substance Act ***, or is the proceeds of such an exchange, and therefore forfeitable under this Act, such presumptions being rebuttable by a preponderance of the evidence:

(1) All moneys, coin, or currency found in close proximity to forfeitable substances ***." 725 ILCS 150/7 (West 2004).

On June 6, Ganious filed a response to the complaint, stating that he had found the money on February 17. On June 27, Wilson filed a verified claim, stating that he was the owner of 6106 South Maplewood and everything therein. Specifically, Wilson stated that the $111,900 found in the false ceiling was and is his. According to Wilson, he acquired the money on February 21, 1997, when he acquired the building. Wilson also filed a motion to dismiss the State's complaint for lack of jurisdiction.

On August 29, Wilson filed a motion for summary judgment against Ganious, stating that he had no colorable claim to the money because it was found on Wilson's property. In an affidavit attached to this motion, Wilson averred that on February 17, he had hired Ganious to do rehab work at his building. Thereafter, the

3

State responded to Wilson's motion to dismiss and motion for summary judgment, raising the issue of standing as to both claimants. On October 31, during a status hearing, it was made a matter of record that Wilson and Ganious had made an agreement that, if the money was to be returned to them, they would split it.

On April 24, 2003, the trial court entered an order denying Wilson's motion to dismiss as well as his motion for summary judgment. The case was then continued from time to time. On March 12, 2004, the State filed a motion to strike the claim and answer of Ganious on the basis that he had no legal ownership interest in the money and, therefore, lacked standing. Attached to the motion were excerpts from Ganious' deposition.[2] In this deposition, Ganious admitted that the money was in close proximity to the cocaine at his home and that, when he carried the money into his home, he had had cocaine in his pocket. According to Ganious, he was performing drywall work at Wilson's property and after he had taken down the old ceiling to put in a new drywall ceiling, "it [the suitcase] came out of the ceiling." Ganious stated that inside the suitcase was a black bag containing the money. When Ganious discovered the money in the suitcase, he "thanked God," called a cab, and went home. When Ganious arrived home, he moved some of the money from the suitcase to his attache case. Ganious stated that he never counted the money and denied being afraid that

---

[2]The entire deposition transcript is not part of the record on appeal.

4

the money might belong to drug dealers who would come looking for him. According to Ganious, the suitcase that fell from the ceiling was the same suitcase the police took from his bedroom.

On May 6, Ganious responded to the State's motion to strike, arguing that, as the finder of the lost money, he had a legal ownership interest in it and, thus, standing to contest the forfeiture. Thereafter, the State responded and, ultimately, the trial court denied the State's motion to strike Ganious' answer.

On August 5, a bench trial was held. It was the State's position that it demonstrated probable cause for forfeiture of the money based on the presumption that it was found in close proximity to cocaine. Officer Windhorst testified that on February 27, 2002, at approximately 11:30 p.m., he and his partner, Officer Walsh, went to 7754 South Burnham, #2, responding to a 911 call that a child had been shot. The officers were met at the apartment door by Ganious. The officers immediately asked Ganious where the shot child was, at which time he responded that no child had been shot and he just told the 911 operator that so the police would arrive quicker. Ganious then told the officers he had found some money, approximately $20,000, and was afraid that the person who owned the money would come to get him. Ganious requested federal protection. Ganious took the officers to his bedroom and showed them where the suitcase with the money in it was. According to Windhorst, he recovered the suitcase from under a couch or futon type of couch.

5

Windhorst stated that the bedroom was 8 x 10 feet, there was a closet, a dresser, and the futon. While Windhorst was retrieving the suitcase, Walsh inquired of Ganious whether a gun was involved, to which he responded in the affirmative and stated it was in the closet. Windhorst then retrieved the gun from the closet. As the officers were talking to Ganious, Windhorst glanced to his left and observed a dish on top of the dresser with seven clear plastic bags containing a white, rock-like substance. Windhorst, believing the substance to be crack cocaine, retrieved these bags as well. The substance was later sent to the lab and tested positive for cocaine. As the police were preparing to leave, Ganious asked them, "Do you want the other one?" When Windhorst inquired of Ganious, "The other what?," Ganious responded, "The other suitcase. It's under the couch." Windhorst recovered a second smaller case, opened it, and discovered more money. The police then left with the items they had recovered as well as Ganious. According to Windhorst, when he asked Ganious where he had found the money, Ganious stated that he had found it in an abandoned building in the 6800 block of South Maplewood. When Windhorst asked Ganious who he was afraid of, Ganious refused to answer and just kept repeating that he wanted federal protection.

At the police station, Ganious was placed in a room and kept yelling that he wanted protection. According to Windhorst, as time went on, Ganious' demeanor changed and he was saying, "I made a mistake. I'm sorry. I just want my money back." Prior to this

6

time, however, Windhorst called for the canine unit. When the canine unit arrived, Windhorst was instructed to take one of the cases out to the parking lot and hide it under a car, which he did. The canine officer let the dog go, who "went in a zigzag pattern immediately" to the car and started barking and biting at the case. According to the canine officer, this was a positive identification for the odor of drugs. After this, Windhorst retrieved the case and took it back into the station. Both cases were then emptied and the money was counted. Windhorst stated that the larger suitcase was about 22 to 24 inches by 18 inches by 7 to 8 inches.

Upon examination by Ganious' attorney, Windhorst admitted that, prior to putting the suitcase under the car, the dog did not sniff the ground or underside of the vehicle to see if it was alerted in any way, nor was the suitcase ever opened for a test on the money. Windhorst also stated that no money was recovered from Ganious' living room and he did not believe the officers ever stepped foot in the living room. When asked whether the futon was right next to the dresser, Windhorst responded, "No. The dresser was to my left where the suspect cocaine was. The futon was directly in front of it." Windhorst admitted that the police did not find any scales, materials for packaging cocaine, cooking vessels, or anything else showing there was some kind of narcotics operation occurring in the home.

Officer Thomas Roper next testified on behalf of the State.

7

On February 27, 2002, Roper met Ganious and Walsh at the police station as the officer on call for the asset forfeiture unit. It was Roper's duty to attempt to ascertain the ownership of the money. In this regard, he tried to question Ganious. However, Ganious would not speak to Roper, but "turned his back and cowered in a corner, crouched down in a corner." Although Roper called Ganious' name two to three times, Ganious would not respond. Roper ceased trying to interview him, but left him a card.

Approximately one month later, Roper received a call from Ganious. At this time, Ganious stated he had found the money while doing plaster work at 6106 South Maplewood. According to Ganious, he was tearing out plaster and a suitcase fell from the ceiling in the far west corner of the bedroom in the rear of the apartment. After ascertaining the owner of the property, Roper spoke with Wilson on the telephone and advised him of the events that had transpired. Wilson acknowledged owning the building, but denied any knowledge of the money. Thereafter, Roper went to the building, spoke with the current resident, and requested to view the bedroom. Roper observed that the corner of the bedroom, as described by Ganious, had been freshly painted. Roper wanted to ascertain the space between the ceiling and the floor above it, but did not want to damage the ceiling by poking a hole in it. The resident advised him that the room next door was not finished. At this time, Roper measured the floor joists in the ceiling, which were 16 inches apart and the clearance between the ceiling and

floor above it was 2 to 3 inches. According to Roper, this ceiling was the same height as the ceiling in the bedroom. Roper then testified that he spoke with Wilson both before and after viewing the property and Wilson indicated that he had no idea about the money in the ceiling.

Upon cross-examination by Ganious' attorney, Roper stated that, prior to his attempt to speak with Ganious, he spoke to the arresting officers who advised him that Ganious appeared to be in a drug-induced stupor during their interview of him and he appeared nervous and agitated, and that, while at Ganious' apartment, Ganious had closed his curtains and shades while leading the police through his residence, spoke in whispers to make sure no one would overhear him, and requested a towel or blanket to put over his head to conceal his identity. Roper further testified that when he went to Wilson's building, he observed that rehab work had been done, but was not able to verify who had done it. Roper also stated that while counting the money, he observed that a majority of the bills were 2000 and 2001 bills and that some of the stacks were $10s in sequence. According to him, because the majority of the bills were 2000 and 2001, it was his belief that the money had not been hidden for a long time. The State then rested and Wilson's attorney moved for a directed finding as to his client.

The parties then presented arguments with respect to the motion for a directed finding. Thereafter, the court first found that Ganious was in a drug-induced stupor at the time of the search

9

and seizure and when he was questioned by the police. It then noted that two cases had been found, one under the futon and maybe one under a couch. However, the court stated that it was assuming the two cases were found in the same place. Thereafter, the court noted that, while cocaine was found on the top of a dresser, there was no description of the dimensions of the dresser or its height. The court further found that while a "sniff test" was done, there was no "hit" on the money, but only on the suitcase. The court then stated that it did not believe the State had established a nexus since it did not think the cocaine on the dresser and the money under the futon were close enough in proximity. Thereafter, the court denied the State's complaint for forfeiture.

Subsequently, the court granted a motion to strike Roper's testimony with respect to his opinions, specifically, the ceiling depth. The court then ordered that the money be paid to Wilson as owner of the property since the court believed the money to be treasure trove. The parties made additional arguments as to who should receive the money. Subsequent to these arguments, the trial court stated that the money was to be returned to both claimants. Thereafter, the trial court entered an order, granting judgment in favor of Ganious and Wilson and staying enforcement of the judgment until September 2. On September 2, the State filed its notice of appeal. The State also filed a motion to stay pending an appeal, which was denied. The trial court ordered that the money was to be released to claimants. On the same day, we granted the State's

1-04-2624

emergency motion for a stay until further order of this court.

ANALYSIS

In a proceeding under the Forfeiture Act, the State has the initial burden of demonstrating probable cause for forfeiture of money recovered from illegal drug activities. *People v. A Parcel of Property Commonly Known As 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 498, 841 N.E.2d 928 (2005) (*1945 North 31st Street*). The legislature has declared that the Forfeiture Act is to be liberally, not strictly, construed. *1945 North 31st Street*, 217 Ill. 2d at 496-97. In *1945 North 31st Street*, the court reiterated the rules relevant to establishing probable cause:

> "To satisfy the probable cause requirement under the Forfeiture Act, a complaint for forfeiture must allege facts providing reasonable grounds for the belief that there exists a nexus between the property and illegal drug activity, supported by less than *prima facie* proof but more than mere suspicion. [Citation.] Probable cause in this context requires only a probability or substantial chance of the nexus and not an actual showing. [Citations.]" *1945 North 31st Street*, 217 Ill. 2d at 505.

11

The strength of the connection need not be a substantial connection. *People v. $1,124,905 U.S. Currency and One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 338, 685 N.E.2d 1370 (1997). "[T]he government's evidence need not exclude other plausible hypotheses of the source of the money." *1945 North 31st Street*, 217 Ill. 2d at 505. Moreover, the State need not tie the money to a specific drug transaction. *$1,124,905 U.S. Currency*, 177 Ill. 2d at 336. "[I]t is the totality of the circumstances, not a minute parsing of each item of information, that leads to a finding of probable cause." *1945 North 31st Street*, 217 Ill. 2d at 505.

Probable cause can be established if the State demonstrates that a presumption exists. See *People v. $5,970 United States Currency*, 279 Ill. App. 3d 583, 588, 664 N.E.2d 1115 (1996). Specifically, "[a] presumption arises [under section 7 of the Forfeiture Act] that currency was furnished or intended to be furnished in exchange for drugs when the currency is found in close proximity to forfeitable substances." *$5,970 United States Currency*, 279 Ill. App. 3d at 587. "During the probable cause portion of the proceeding, the court must receive and consider, among other things, all relevant hearsay evidence and information.' [Citation.]" *1945 North 31st Street*, 217 Ill. 2d at 505.

Once the State satisfies its burden to establish probable cause, the burden shifts to the claimants to demonstrate, by a preponderance of the evidence, that the money is not subject to forfeiture. *1945 North 31st Street*, 217 Ill. 2d at 497. During

1-04-2624

this portion of the proceeding, "the law of evidence relating to civil actions applies." *1945 North 31st Street*, 217 Ill. 2d at 505.

"[I]n a forfeiture case, the circuit court, as the trier of fact, determines the credibility of the witnesses and evaluates their testimony." *1945 North 31st Street*, 217 Ill. 2d at 507. Morever, "the court may draw reasonable inferences and reach conclusions to which the evidence lends itself." *1945 North 31st Street*, 217 Ill. 2d at 507-08. Since "the circuit court bases its conclusion upon its assessment of the evidence, a reviewing court will not reverse an order of forfeiture unless it is against the manifest weight of the evidence." *1945 North 31st Street*, 217 Ill. 2d at 508.

The State contends that the trial court erred in failing to apply the statutory presumption of close proximity, which alone is sufficient to establish probable cause. The State maintains that we review this issue *de novo*. According to the State, since all of the items were found within an 8 x 10 foot bedroom, they were sufficiently near to establish the statutory presumption. In this regard, the State argues that the question should not be one of feet or inches, but should be made on a case-by-case basis.

Ganious contends that the trial court properly declined to apply the statutory presumption because there was no evidence showing the distance between the money and the drugs. Ganious, too, maintains that we review this determination *de novo* because it

13

involved the trial court's interpretation of close proximity. Ganious argues that the State fails to cite any Illinois authority holding that the distance should not be defined in feet or inches; rather, it cites only to an out-of-state case. Ganious further argues that there was no evidence presented that the two cases were taken from under the same couch or futon. According to Ganious, if Windhorst had grabbed the first suitcase, he would surely have seen the second one under the same futon. Because he did not, Ganious maintains this casts doubt on the fact the two cases were under the same couch.[3] Likewise, Ganious maintains that the State is really reaching when it cites to two Maryland cases because the statutes are different and the facts are distinguishable. In this regard, Ganious argues that he offered a cogent and coherent reason for having the money and how it got into his bedroom, which was corroborated by Wilson. Ultimately, Ganious maintains that the money and drugs must be in reach of each other for the statutory presumption to apply.

Initially, we agree with the State that if the statutory presumption is demonstrated, this is sufficient to establish probable cause. See *$5,970 United States Currency*, 279 Ill. App.

---

[3]This argument is speculative and without any support in the record.

1-04-2624

3d at 588; *People v. $1,002.00 U.S. Currency*, 213 Ill. App. 3d 899, 904, 572 N.E.2d 385 (1991). Although several cases in Illinois have addressed the statutory presumption of close proximity, none have expressly defined the breadth or parameters of the term, nor have they set forth guidelines for determining whether an object is in close proximity to another. We find cases from other jurisdictions instructive. Although Ganious argues that out-of-state cases are not relevant because they are based on different statutes, we disagree. Clearly, when there is no Illinois authority on a point, we may look to other jurisdictions for guidance. *Allstate Insurance Co. v. Lane*, 345 Ill. App. 3d 547, 552, 803 N.E.2d 102 (2003). We believe this to be particularly true here where the statutes of the other jurisdictions are quite similar and utilize the same terminology in the same context.

In *$15,956 in U.S. Currency v. State*, No. 05-671, ___ S.W.3d ___ (Ark. April 6, 2006), the Arkansas Supreme Court reiterated the rules adopted in Arkansas with respect to close proximity. "Close proximity" means "very near." *$15,956 in U.S. Currency,* slip op. at ___. Specifically, the court stated: " '[W]hether one thing is in close proximity to another under the forfeiture statute is to be determined on a case-by-case basis, not by a particular number of feet, by reference to particular rooms, or by any rule of thumb.' [Citation.]" *$15,956 in U.S. Currency*, slip op. at ___. Thus, the interpretation of close proximity, " 'depends upon the facts and circumstances existing in connection with their application.'

15

1-04-2624

[Citation.]" *$15,956 in U.S. Currency*, slip op. at ___. See also *Limon v. State*, 285 Ark. 166, 168, 685 S.W.2d 515, 516-17 (1985) ("The meaning of close proximity is to be made on a case-by-case basis and is not subject to 'rigid rules.' [Citation.]").

The Delaware Superior Court espoused the following rules:

"What constitutes close proximity was examined in the case of *In the Matter of: $1,165.00 U.S. Currency,* Del. Super., C.A. No. 95M-05-009-RSG, Reynolds, Commissioner (March 6, 1997) at 11-14, and I quote therefrom:

'Close proximity' is a relative term. However, there are many cases construing identical or similar language in various forfeiture statutes in a number of states and localities. Analysis of those cases indicates that close proximity is not usually determined in the abstract. Rather, the courts tend to consider the totality of circumstances in determining whether seized money is in close enough proximity to illegal drugs or paraphernalia to raise an inference that the money was used in, or

16

derived from, drug dealing. ***
The 'close proximity' provision applying to money in the Act does not appear to have been previously construed by this Court. However, in construing other provisions of the statute, this Court has utilized a probable cause approach.... In applying the test, this Court took into account the totality of the circumstances, .... *** [Citations and footnotes omitted.]" *Cottman v. State*, No. 97M-09-020, slip ord. at ___ (Del. Super. April 19, 1999) (unpublished).

Likewise, the Maryland courts have treated the determination of close proximity in a similar manner. Specifically, the courts there have held:

" 'The breadth of the term "close proximity" deliberately has not been defined by either Maryland appellate court. Were we to undertake a delineating of "close proximity," it is almost a foregone conclusion that in any future searches, monies will always be found outside the area embraced by

17

our definition. We shall not, therefore, attempt to define "close proximity." Instead, we shall treat the term with the same deference afforded "fraud" and "a quantity sufficient to indicate an intent to distribute." *** We do not define it, but we know it when we see it. In short, we shall determine "close proximity" on a case-by-case basis.' [Citation.]" *Ewachiw v. Director of Finance of Baltimore City*, 70 Md. App. 58, 64-65, 519 A.2d 1327, 1330 (1987).

Lastly, the Missouri courts have stated, " 'The words "close proximity" are words of common usage, understandable by a person of normal intelligence.' [Citation.]" *State v. Dillon*, 41 S.W.3d 479, 486 (Mo. App. 2000).

We adopt this approach in Illinois. Specifically, the determination of whether one object is in close proximity to another object under the presumption of the Forfeiture Act must be based upon a totality of the circumstances, made on a case-by-case basis founded upon common sense. A rigid approach based on feet, inches, or some other esoteric formula or definition is simply not workable nor logical. We believe this approach is supported by Illinois law. First, the Forfeiture Act is to be liberally construed. *1945 North 31st Street*, 217 Ill. 2d at 496-97.

18

1-04-2624

Applying a rigid formula would not serve this purpose. Moreover, the Illinois Supreme Court has specifically stated, with respect to probable cause, of which this presumption relates, that the trial court must look to the totality of the circumstances on a case-by-case basis. *1945 North 31st Street*, 217 Ill. 2d at 505. Lastly, use of the totality of the circumstances of a particular case, combined with common sense, is only logical. Close proximity should not, and cannot, rationally be defined in precise terms. To do so, would result in absurd results. If the objects were required to be within one's reach or within reach of each other, inconsistent and unreasonable results would occur. For example, if an individual who owns a Geo Metro and has money in the front seat and drugs in the back seat, these items would logically be within reach of each other and, thus, the statutory presumption of close proximity would be satisfied and demonstrate the items were subject to forfeiture. However, if that same person owned a Navigator or some other large SUV, items in the backseat or even in the cargo area would not be within reach and, thus, not satisfy close proximity. Clearly, the legislature did not intend such absurd results based on the size of a vehicle or the precise distance between one object and another. The same is true with respect to objects' locations on premises. As such, we agree with the State that close proximity is not a matter of feet or inches, and disagree with Ganious, who cites no authority to support his position, that close proximity mandates that the objects be within

19

reach of each other.

The cases addressing close proximity in Illinois further support such a conclusion, although, again, none have so defined or delineated the scope of this determination. In *$5,970 United States Currency*, relied upon by the State, the claimant was stopped for driving with a suspended license. *$5,970 United States Currency*, 279 Ill. App. 3d at 585. During a search of the claimant's car, the police discovered a "Twinkies" box on the passenger front floor that contained $5,970. *$5,970 United States Currency*, 279 Ill. App. 3d at 585. Within inches of this box, the police also found a plastic bag containing white rocky residue, which was determined to be cocaine residue. The claimant also had a pager attached to his pocket and a search of his pocket revealed another plastic bag with a small amount of white rocky residue, as well as $55.99. *$5,970 United States Currency*, 279 Ill. App. 3d at 586. After a hearing, the trial court ruled in favor of the claimant, but upon the State's motion to reconsider, reversed its decision and ordered the money forfeited. *$5,970 United States Currency*, 279 Ill. App. 3d at 587. On appeal, the court concluded: "By adducing evidence that the currency was found in close proximity to cocaine, the State effectively raised the presumption that the currency was furnished or was intended to be furnished in exchange for drugs," and, therefore, it presented sufficient evidence to establish probable cause. *$5,970 United States Currency*, 279 Ill. App. 3d at 588.

20

In *People v. $52,204.00 United States Currency*, 252 Ill. App. 3d 778, 623 N.E.2d 959 (1993), the trial court entered an order forfeiting $52,204 found in two safes located in the claimant's son's bedroom. In this bedroom, the police found numerous guns, ammunition, and four safes that were two to four feet from each other. *$52,204.00 United States Currency*, 252 Ill. App. 3d at 779. One of the safes held $51,946, a gun, and two savings passbooks, another held $258 plus other items, and the other two were empty. All four safes were tested for the presence of drugs and only one of the empty safes showed the presence of cocaine residue. *$52,204.00 United States Currency*, 252 Ill. App. 3d at 780. The trial court ordered forfeiture of the money recovered from the safes. *$52,204.00 United States Currency*, 252 Ill. App. 3d at 781. On appeal, the appellate court reversed, finding that the State failed to show that the statutory presumption based on close proximity had been raised. *$52,204.00 United States Currency*, 252 Ill. App. 3d at 783. Specifically, the safe in which the cocaine residue, which was a microscopic amount, was empty, and because the State presented no evidence as to where or when the bills in the other safes were, if they had in fact been, in close proximity to the cocaine. *$52,204.00 United States Currency*, 252 Ill. App. 3d at 784.

In *People v. $4,175.00 U.S. Currency*, 239 Ill. App. 3d 857, 607 N.E.2d 610 (1993), relied upon by Ganious, the trial court ruled in favor of the claimant and denied the State's complaint for

forfeiture, finding that the State failed to establish probable cause and failed to demonstrate that the statutory presumption of close proximity was established. *$4,175.00 U.S. Currency*, 239 Ill. App. 3d at 861. During a search of the claimant's home, the police discovered 14 manilla envelopes containing 15.54 grams of marijuana and $35 in the second drawer of a dresser contained in the middle east bedroom of the home. *$4,175.00 U.S. Currency*, 239 Ill. App. 3d at 860. This room contained female and children's clothing and belonged to the claimant's daughter. In the southeast bedroom, which was the claimant's, the police discovered $4,140 in the pocket of claimant's pants. The record disclosed that the two bedrooms were adjacent to each other, but their doors were not. *$4,175.00 U.S. Currency*, 239 Ill. App. 3d at 860. On appeal, the appellate court concluded that the State failed to establish the statutory presumption of close proximity. Specifically, "no cannabis was found in plain view but rather was found in sealed envelopes in a dresser drawer in a room containing women's and children's clothing. No scales, envelopes, or any other indicia of drug trafficking were found on the person of the claimant, in his bedroom, or in the remainder of the residence." *$4,175.00 U.S. Currency*, 239 Ill. App. 3d at 865. In this regard, the court held that, if it were to rule the presumption had been established based on these facts, it would be "tantamount to determining that the presumption exists whenever contraband and money are found in the same premises, without a connection between them." *$4,175.00 U.S.*

22

1-04-2624

*Currency*, 239 Ill. App. 3d at 865.

In *People v. U.S. Currency $3,108,* 219 Ill. App. 3d 441, 579 N.E.2d 951 (1991), relied upon by Ganious, the trial court denied the State's complaint for forfeiture. *U.S. Currency $3,108*, 219 Ill. App. 3d at 442.[4] A search of the claimant's home pursuant to a search warrant yielded the following items from a portable safe contained in his bedroom: $3,108, drug paraphernalia, a bag containing four to five ounces of a white powdery substance, that later failed to test positive for cocaine, and jewelry. *U.S. Currency $3,108*, 219 Ill. App. 3d at 443. Discovered in a hamper in the bathroom, which was directly adjacent to the claimant's bedroom, were three packets containing .80 grams of cocaine. *U.S. Currency $3,108*, 219 Ill. App. 3d at 443. It was the State's position that the money was subject to forfeiture because it was discovered in close proximity to the cocaine. *U.S. Currency $3,108*, 219 Ill. App. 3d at 443. The trial court disagreed, which the appellate court affirmed. Although the appellate court noted that, while claimant's bedroom was a separate room, it "was in close proximity to the hamper." *U.S. Currency $3,108*, 219 Ill. App. 3d at 448. However, other individuals had access to the hamper and, because of this, the appellate court concluded that the State failed to establish a *prima facie* case for forfeiture. *U.S.*

---

[4]This case was decided under the State's old initial burden of proof, preponderance of the evidence.

1-04-2624

*Currency $3,108*, 219 Ill. App. 3d at 448.

In *$1,002.00 U.S. Currency*, relied upon by the State here, the trial court denied the State's complaint for forfeiture. *$1,002.00 U.S. Currency*, 213 Ill. App. 3d at 900. Following a traffic stop of the claimant, the police found $1,022 in his pocket ($20 was given to his passenger for transportation), a red and white capsule in the car, and, in the backseat of the car, a red suitcase that contained hypodermic needles, balloons with a white powder substance, and a "bottle-cap" cooker. Both of the latter items subsequently tested positive for heroin. *$1,002.00 U.S. Currency*, 213 Ill. App. 3d at 900. The appellate court reversed the trial court's denial of the State's complaint for forfeiture, finding that the statutory presumption based on close proximity had been established through the testimony of a police officer that the suitcase in the backseat of the car was within reach of the claimant. *$1,002.00 U.S. Currency*, 213 Ill. App. 3d at 904.

In *In re Twenty-Seven Thousand Four Hundred Forty Dollars*, 164 Ill. App. 3d 44, 517 N.E.2d 704 (1987) (*$27,440*), relied upon by the State and Ganious, the trial court denied the State's complaint for forfeiture. *$27,440*, 164 Ill. App. 3d at 45. Although the facts of this case are not relevant, with respect to the statutory presumption based upon close proximity, the court found that "the legislature intended the presumption to apply to situations where observable controlled substances or distributing paraphernalia, etc., are found in near proximity to currency." *$27,440*, 164 Ill.

24

1-04-2624

App. 3d at 48.

In *People ex rel. Daley v. Nine Thousand Four Hundred and Three Dollars, $9,403 in U.S.C.*, 131 Ill. App. 3d 188, 476 N.E.2d 80 (1985) (*$9,403*), again relied upon by both the State and Ganious, the trial court ruled in favor of the State on its complaint for forfeiture, finding that the statutory presumption based on close proximity had been raised. *$9,403*, 131 Ill. App. 3d at 190-91. In this case, a search was conducted of the claimant's single family home. A vial of tinfoil packets was discovered on the kitchen table; three of which contained heroin. *$9,403*, 131 Ill. App. 3d at 190. The sum of $8,542 was found in the claimant's bedroom, which was directly adjacent to the kitchen. Specifically, $7,000 was found in a dresser drawer, which also contained numerous hypodermic needles. Additionally, $1,450 was found in the bedroom closet, along with a bag containing several handguns. Lastly, on top of the dresser, the police discovered scales, a quantity of plastic bags, squares of tinfoil, and an ounce of powder used to dilate heroin. *$9,403*, 131 Ill. App. 3d at 190. On appeal, the claimant argued that "when the money sought to be forfeited is found in a separate room from the forfeitable substance, the presumption is not raised because close proximity is not established." *$9,403*, 131 Ill. App. 3d at 191. The court disagreed, finding that, in the case before it, "the funds seized were found in a room directly adjacent to that where the heroin was

25

found.  Moreover, the funds were in the same room as the scale and other drug paraphernalia."   *$9,403*, 131 Ill. App. 3d at 191.  According to the court, it would "not restrict or enlarge the plain meaning of an unambiguous statute to require that controlled substances and forfeitable items related thereto be found in the same drawer, box, or cabinet as the money."  *$9,403*, 131 Ill. App. 3d at 192.

Clearly, none of these cases have mandated a set distance in either feet or inches.  Moreover, it is clear from these cases that Illinois courts have found that objects in different rooms can be in close proximity.  See *U.S. Currency $3,108*, 219 Ill. App. 3d at 448 (bathroom and adjacent bedroom); *$9,403*, 131 Ill. App. 3d at 191 (kitchen and adjacent bedroom).

Based on the foregoing, the facts relevant to the inquiry here are the circumstances existing in Ganious' room at the time.  In other words, the questions of whether Ganious gave a "cogent and coherent" reason for possessing the money, whether he was in a drug-induced stupor when he allowed the police to take the money and was later interviewed, the circumstances surrounding the canine sniff, and other similar questions are simply not relevant.  In this regard, we disagree with the trial court's finding that the fact no evidence was offered as to the dimensions of the dresser or its height is dispositive.  Clearly, no case, either in Illinois or elsewhere, has required such evidence.

Here, the undisputed evidence shows the following.  Ganious

took the police to his bedroom, which was 8 x 10 feet. There can be no question in any rational person's mind that this is a very small bedroom. In this bedroom, according to Windhorst's testimony, was a futon, a dresser, and a closet. A gun was retrieved from the closet. A suitcase and another case were recovered from under the futon. In this regard, we disagree with Ganious that this is a disputed question. Windhorst testified that he was never in the living room and there is no evidence of the presence of any other couch or futon in the apartment. Whether directly in front of the futon or very near it, given the dimensions of the room, the police discovered the cocaine on the dresser. Clearly, given the spacial relationship of this room, there can be no question that all of the objects were found in close proximity, or very near, to each other. We therefore find that the trial court erred in failing to apply the statutory presumption that the money was forfeitable based on its close proximity to the cocaine. Specifically, we find that the trial court erred in requiring the State to prove the dimensions or height of the dresser or its distance from the futon. Certainly, in a room this size, everything, under a common sense view, had to be within close proximity.

We further believe that the trial court collapsed the necessary analysis in this case by addressing facts and factual questions as to other issues in analyzing the close proximity/probable cause issue. Since the State met its burden of

demonstrating that the statutory presumption arose, the burden then should have been shifted to claimants to demonstrate, by a preponderance of the evidence, under the civil rules of procedure and evidence, that the money was not subject to forfeiture. As the State argues, the trial court appears to have addressed this question without requiring claimants to present any admissible evidence to the court.

Accordingly, we reverse the trial court's determination as contrary to law and remand this cause for further proceedings consistent with this decision and the dictates of the Forfeiture Act, including the question of the claimants' standing under applicable law. Based on our conclusion, we need not address the State's argument that the trial court erred in granting a directed verdict in favor of claimants because, as a matter of law, the totality of circumstances surrounding Ganious' voluntary surrender of the money established probable cause. However, we note in this regard, that the State did not posit this theory or argument before the trial court.

### CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court of Cook County and remand this cause.

Reversed and remanded.

CAHILL, P.J., and GORDON, J., concur.

28